GLENN L. BRIGGS (SBN 174497)
Email: gbriggs@kadingbriggs.com
SARAH R. MOHAMMADI (SBN 295318)
Email: smohammadi@kadingbriggs.com
KADING BRIGGS LLP
100 Spectrum Center Drive, Suite 800
Irvine, California 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Defendant
STAPLES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SANCHEZ, an Individual, <br><br> Plaintiff, <br><br> vs. <br><br> STAPLES, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO.: _____ <br><br> [Riverside County Superior Court Case No. CVSW2109438] <br><br> **DEFENDANT STAPLES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332 AND 1441 (DIVERSITY)** <br><br> Complaint Filed: November 5, 2021 |

510319

1

1
2

# **TABLE OF CONTENTS**

**PAGE NO.**

3

JURISDICTION ...................................................................................5

4

DIVERSITY OF CITIZENSHIP...........................................................6

5

    Staples, Inc. Is a Citizen of Delaware and Massachusetts................6

6

    Plaintiff Is a Citizen of California....................................................7

7

INTRADISTRICT ASSIGNMENT .......................................................9

8

AMOUNT IN CONTROVERSY ...........................................................9

9

    Plaintiff's Alleged Lost Wages Alone Could Exceed the Requisite
    $75,000 Amount In Controversy ....................................................10

10

    Plaintiff's Alleged General, Special, and Punitive Damages Place
    the Amount in Controversy in Excess of $75,000...........................11

11

    Plaintiff's Request for Attorneys' Fees Places the Amount in
    Controversy in Excess of $75,000 ..................................................12

12

13

    Jury Verdicts Establish that Plaintiff's Claims Regularly Result
    in Damage Awards in Excess of $75,000 .......................................13

14

PROCESS, PLEADINGS AND ORDERS ............................................15

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

PAGE NO.

2

## CASES

3   *3123 SMB LLC v. Horn*,
        880 F.3d 461 (9th Cir. 2018).............................................................7

4

*Avila v. P & L Dev.,*
5        *LC*, No. CV 18-01211 SJO (AS),
        2018 WL 1870422 C.D. Cal. Apr. 18, 2018)................................12, 13

6

*Boon v. Allstate Ins. Co.,*
7        29 F. Supp. 2d 1016 (C.D. Cal. 2002)...............................................7

8   *Castanon v. Int'l Paper Co.,*
        Case No. 2:15-cv-08362-ODW (JC),
9        2016 WL 589853 (C.D. Cal. Feb. 11, 2016)....................................12

10  *Chambers v. Penske Truck Leasing Corp.,*
        Case No. 1:11-CV-00381 LJO,
11        2011 WL 1459155 (E.D. Cal. April 15, 2011)................................11

12  *Chavez v. JPMorgan Chase & Co.,*
        888 F.3d 413 (9th Cir. 2018).........................................................11

13  *Davis v. HSBC Bank Nevada, N.A.,*
14        557 F.3d 1026 (9th Cir. 2009).........................................................6

15  *Gibson v. Chrysler Corp.,*
        261 F.3d 927 (9th Cir. 2001).........................................................11

16

*Haase v. Aerodynamics Inc.,*
17        Case No. 2:09-CV-01751-MCE-GG,
        2009 WL 3368519 (E.D. Cal. Oct. 19, 2009) ................................11

18

*Hertz Corp. v. Friend,*
19        130 S.Ct. 1181 (2010) .................................................................6, 7

20  *Kanter v. Warner-Lambert Co.,*
        265 F.3d 853 (9th Cir. 2001)...........................................................7

21

*Lew v. Moss,*
22        797 F.2d 747 (9th Cir. 1986).........................................................8

23  *Mondragon v. Capital One Auto Finance,*
        776 F.3d 880 (9th Cir. 2013)...........................................................8

24

*Navarro v. DHL Glob. Forwarding,*
25        Case No. 215CV05510CASEX,
        2018 WL 2328191 (C.D. Cal. May 21, 2018) ................................12

26

*Richmond v. Allstate Ins. Co.,*
27        897 F. Supp. 447 (S.D. Cal. 1995)................................................12

28

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS (cont'd)

**PAGE NO.**

**CASES**

*Simmons v. PCR Tech.,*
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) ....................................11, 12, 13, 15

**STATUTES**

28 U.S.C. Section 1332....................................................................5, 6, 7, 8

28 U.S.C. Section 1441....................................................................5

28 U.S.C. Section 1441(b)(1) ...........................................................6

28 U.S.C. Section 1446(a) ...............................................................9

28 U.S.C. Section 1446(b)................................................................5

California Government Code Section 12965(b)................................12

Civil Local Rules 3-2 & 3-5 ............................................................9

510319

4

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE THAT defendant Staples, Inc. ("Staples") hereby removes the state court action described below pursuant to 28 U.S.C. Sections 1332 and 1441.

1.    On November 5, 2021, Plaintiff Victor Sanchez ("Plaintiff") commenced an action against Staples in the Superior Court of the State of California, County of Riverside, titled *Victor Sanchez v. Staples, Inc., et al.*, Case No. CVSW2109438.  A true and correct copy of the Complaint and Civil Case Cover Sheet is attached hereto as Exhibit "A."  A true and correct copy of the Summons, issued on November 5, 2021, is attached hereto as Exhibit "B."

2.    Plaintiff effectuated service on Staples on November 12, 2021, via process server.  The Proof of Service is attached hereto as Exhibit "E."

3.    Because Plaintiff effectuated service of the Complaint on Staples on November 12, 2021, and this Notice of Removal is filed on December 9, 2021, this Notice of Removal is filed within 30 days from the date upon which Staples was served and is within the time for removal provided by law.  *See* 28 U.S.C. § 1446(b).

## **JURISDICTION**

4.    This is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to this Court by Staples pursuant to the provisions of 28 U.S.C. Section 1441, in that it is an action in which

510319

NOTICE OF REMOVAL OF CIVIL ACTION

the amount in controversy exceeds $75,000 and Plaintiff and Staples are citizens of different states.[1]

## DIVERSITY OF CITIZENSHIP

5.    There is complete diversity between Plaintiff and Staples.

## Staples, Inc. Is a Citizen of Delaware and Massachusetts

6.    For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.' 28 U.S.C. § 1332(c)(1)." *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).

7.    Staples is incorporated under the laws of the State of Delaware. Accordingly, Staples is a citizen of Delaware. 28 U.S.C. § 1332(c)(1).

8.    To determine a corporation's principal place of business, federal courts must utilize the "nerve center" test. *Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1183 (2010). Under the "nerve center" test, a corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* Per the United States Supreme Court, a corporation's nerve center "should normally be the place where the corporation

---

[1]  Staples is the only named defendant; the citizenship of the fictitious "Doe" defendants is disregarded for removal purposes. *See* 28 U.S.C. § 1441(b)(1). Notably, Staples is not a proper defendant, because it did not employ Plaintiff. The entity that did employ Plaintiff is Staples the Office Superstore, LLC. Plaintiff has filed an amendment in state court substituting Staples with the correct entity, Staples the Office Superstore, LLC. Exhibit F. However, because the Court has not yet signed the order confirming the substitution, Staples files this removal.

510319

maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

9.     Staples'[2] principal place of business is in the State of Massachusetts. Staples maintains its executive office in Massachusetts. Staples' executive, finance, accounting, marketing, information systems, and legal functions all are centralized at its Massachusetts headquarters. Staples' upper management have their offices in Massachusetts. Finally, Massachusetts is where company-wide decisions and policies are made. Accordingly, under the nerve center test, Staples' principal place of business is Massachusetts, and Staples is a citizen of Massachusetts. *Hertz*, 130 S. Ct. at 1183-84; 28 U.S.C. § 1332(c)(1).

## **Plaintiff Is a Citizen of California**

10.     "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determination by the

---

[2] Staples the Office Superstore, LLC (the correct defendant, and the defendant Plaintiff is substituting for Staples) is also a citizen of states other than California. *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) ("an LLC is a citizen of every state of which its owners/members are citizens"). Staples the Office Superstore's sole member is Office Superstore West LLC, a limited liability company. The sole member of Office Superstore West LLC is Office Superstore East LLC, a limited liability company. The sole member of Office Superstore East LLC is USR Parent, Inc. Thus for the purposes of diversity, citizenship of Staples the Office Superstore, LLC (the Defendant) shall be determined by citizenship of USR Parent, Inc. ("USR"), a corporation. USR is incorporated under the laws of the State of Delaware, making it a citizen of Delaware. 28 U.S.C. § 1332(c)(1). USR's principal place of business is the State of Massachusetts, with its headquarters in Massachusetts, executive, finance, accounting, marketing, information systems and legal functions centralized in Massachusetts, and Massachusetts is where company-wide decisions and policies are made. Accordingly, under the nerve center test, USR it a citizen of Massachusetts, its principal place of business. *Hertz,* 130 S. Ct. at 1183-84; 28 U.S.C. § 1332(c)(1).

NOTICE OF REMOVAL OF CIVIL ACTION

510319

1   individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d

2   747, 749-750 (9th Cir. 1986)).  A person is "domiciled" in a location where he has

3   established a fixed habitation where he intends to remain indefinitely. *Id*.

4   Furthermore, "a person's old domicile is not lost until a new one is acquired." *Id*. at

5   750.

6

7       11.   Plaintiff lives in Murrieta, California and in his Complaint alleges that

8   he is currently a California resident. *See* Exhibit A, ¶ 5.  He started working in

9   California for Staples the Office Superstore, LLC in July 2013 in Temecula,

10  California.  The last store that Plaintiff worked out of was also the Temecula,

11  California store.  Plaintiff also worked in California before working for Staples the

12  Office Superstore, LLC, was born in California and went to high school in

13  California.

14

15      12.   Plaintiff does *not* reside in Delaware or Massachusetts (the states of

16  Staples' citizenship), nor is there any indication that he has an intention to move to

17  Delaware or Massachusetts in order to live there indefinitely.  Accordingly, at the

18  time Plaintiff filed this action as well as at the time of removal, Plaintiff was not

19  and is not a citizen of Delaware or Massachusetts.  As such for diversity purposes,

20  Plaintiff and Staples are not citizens of the same state as Plaintiff is a citizen of

21  California. *See, e.g., Mondragon v. Capital One Auto Finance*, 776 F.3d 880 (9th

22  Cir. 2013) (holding that, in connection with removal to federal court, a person's

23  continuing domicile in a state establishes citizenship "unless rebutted with

24  sufficient evidence of change"); *Lew*, 797 F.2d at 751-52 (holding that California

25  was the state of domicile for a party with a California residential address).

26

27      13.   Accordingly, the diversity of citizenship requirement under 28 U.S.C.

28  Section 1332 is satisfied.

510319

**INTRADISTRICT ASSIGNMENT**

14.     Staples hereby request that this matter be assigned to the United States District Court for the Central District of California, Eastern Division, because the state court in which the action was filed by Plaintiff is within this judicial district. *See* 28 U.S.C. § 1446(a); Civil Local Rules 3-2 & 3-5.

**AMOUNT IN CONTROVERSY**

15.     The amount in controversy exceeds $75,000 given that Plaintiff's Complaint alleges claims for: (i) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (ii) failure to reasonably accommodate in violation of the FEHA; (iii) failure to engage in the interactive process in violation of the FEHA; (iv) failure to maintain a workplace free from discrimination and retaliation in violation of the FEHA; (v) retaliation in violation of the FEHA; (vi) wrongful termination in violation of public policy; and (vii) wrongful constructive termination in violation of public policy.  Plaintiff claims to have suffered and continues to suffer "emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc." *See* Exhibit A, ¶¶ 44, 53, 59, 67, 74, 80, 88, 95.  Plaintiff also claims to have suffered "actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation." *Id.* at ¶¶ 44, 52, 60, 66, 73, 79, 87, 94.  As a result, Plaintiff seeks recovery of general damages, special damages, consequential and incidental damages, economic damages (including loss of past and/or future earnings), for non-economic damages (including emotional distress, physical injury, pain and suffering), punitive and/or exemplary damages, attorneys'

1    fees, interest and costs.  *Id.* ¶¶ pp. 44, 54-55, 61-62, 68-69, 75-76, 81-82, 89, 96,

2    and Prayer for Relief (p. 36).

3

4        16.    During a call between Plaintiff's counsel and Staples' counsel on

5    December 7, 2021, Plaintiff's counsel represented that he did not anticipate filing a

6    motion to remand.  *See* Mohammadi Decl. ¶ 3.

7

8        **Plaintiff's Alleged Lost Wages Alone Could Exceed the Requisite $75,000**

9                            **Amount In Controversy**

10

11       17.    Plaintiff worked for Staples the Office Superstore, LLC as a full time

12   Print and Marketing Supervisor and had an hourly rate of $16.32, making Plaintiff's

13   yearly salary approximately $34,000.  This figure does not include benefits, which

14   generally are valued as 30% of an employee's pay, and in which Plaintiff

15   participated.  In addition to seeking lost past and future wages based on this

16   compensation, Plaintiff seeks other general and compensatory damages including

17   emotional distress damages and loss of employment benefits.  *See id.* ¶¶ 44, 52-55,

18   59-62, 66-69, 73-76, 79-82, 87-89, 94-96 and Prayer for Relief (p. 36).

19

20       18.    Plaintiff alleges that he resigned on April 21, 2021.  *Id.* at ¶ 41.

21   Approximately seven and a half months have passed since then, meaning that

22   Plaintiff's purported lost wages since then alone could be over $21,000.  Plaintiff

23   also contends that he was inappropriately put on a leave of absence and denied the

24   right to work (and as a result, his salary) between September 2020 and April 2021.

25   This additional seven months could increase Plaintiff's purported lost wages by

26   another $20,000.  Furthermore, given that this matter will plausibly receive a trial

27   date approximately eighteen months after the filing of this Notice of Removal

28   (December 9, 2021), (potentially resulting in another $51,000 in lost wages),

1   Plaintiff's alleged lost wages *alone* could exceed the $75,000 amount in

2   controversy.  *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir.

3   2018) (holding that it was appropriate to consider lost future wages in assessing

4   whether the amount in controversy was satisfied on removal).

5

6   **Plaintiff's Alleged General, Special, and Punitive Damages Place the Amount**

7   **in Controversy in Excess of $75,000**

8

9        19.    Plaintiff also seeks general and special damages, including but not

10   limited to economic damages and emotional distress.  *See,* Exh. A, ¶¶ 44, 52-53, 59-

11   60, 66-67, 73-74, 79-80, 87-88, 94, 99 and Prayer for Relief (p. 36).  Moreover,

12   Plaintiff also seeks punitive damages.  *See id*. ¶¶ 54, 61, 68, 75, 81, 89, 96 and

13   Prayer for Relief (p. 36).  In addition to compensatory damages, punitive damages

14   are used to determine whether the jurisdictional minimum has been satisfied.  *See*

15   *Gibson v. Chrysler Corp*., 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established

16   that punitive damages are part of the amount in controversy in a civil action."); *see*

17   *also Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (stating

18   "the potential for large punitive damage awards in employment discrimination

19   cases" satisfies the $75,000 requirement); *Chambers v. Penske Truck Leasing*

20   *Corp*., Case No. 1:11-CV-00381 LJO, 2011 WL 1459155, *4 (E.D. Cal. April 15,

21   2011) (finding that amount in controversy was satisfied because "punitive damages

22   in employment matters may be substantial"); *Haase v. Aerodynamics Inc.*, Case No.

23   2:09-CV-01751-MCE-GG, 2009 WL 3368519, *4 (E.D. Cal. Oct. 19, 2009)

24   (denying remand in FEHA action as "even a minimum award of punitive damages

25   would satisfy the jurisdictional requirement").  Given that juries tend to award

26   substantial punitive damages in connection with discrimination and wrongful

27   termination verdicts, it is apparent from the Complaint that the amount in

28   controversy far exceeds the $75,000 jurisdictional threshold.

510319

20.     Moreover, given that Plaintiff's lost wages alone already could exceed $75,000, *any* award of punitive and/or emotional distress damages further elevates the amount in controversy above the jurisdictional threshold.

## Plaintiff's Request for Attorneys' Fees Places the Amount in Controversy in Excess of $75,000

21.     Plaintiff also seeks attorneys' fees. *See* Exhibit A, ¶¶ 55, 62, 69, 76, 82 and prayer for relief (p. 36).  Should Plaintiff prevail on his claims for discrimination, retaliation, failure to prevent discrimination and retaliation and/or failure to accommodate he will be entitled to recover attorneys' fees. *See* Cal. Gov't Code § 12965(b).  When attorneys' fees are recoverable by statute, they are also factored into the determination of the amount in controversy. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (attorneys' fees are included in the amount in controversy "if recoverable by statute or contract").

22.     Courts recognize that litigating discrimination cases requires "substantial effort" from counsel. *Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002).  Courts have endorsed estimates for the number of hours expended through trial in employment cases from 100 to 300 hours. *See, e.g.,* *Castanon v. Int'l Paper Co.*, Case No. 2:15-cv-08362-ODW (JC), 2016 WL 589853, at *4 (C.D. Cal. Feb. 11, 2016); *see also Avila v. P & L Dev., LLC*, No. CV 18-01211 SJO (AS), 2018 WL 1870422, at *3 (C.D. Cal. Apr. 18, 2018) (stating that a "conservative" approach estimates fees corresponding to approximately 100 hours spent by counsel on an employment lawsuit and finding that attorneys' fees increased total amount in controversy to over $75,000, establishing diversity jurisdiction); *Navarro v. DHL Glob. Forwarding*, Case No. 215CV05510CASEX, 2018 WL 2328191, at *5 (C.D. Cal. May 21, 2018), *appeal dismissed*, No. 17-

510319

56662, 2018 WL 6722404 (9th Cir. Nov. 6, 2018) (awarding plaintiff over $600,000 in fees for over 1,000 hours of attorney work in employment discrimination action); *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (collecting numerous authorities finding between $300 and $400 per hour to be reasonable rates in employment litigation for counsel with twenty or more years of experience, between $250 and $300 for counsel with less than fifteen years of experience, and between $125 and $200 for counsel with less than two years of experience).

23.    Here, assuming *Avila's* "conservative" estimate of 100 counsel hours at a rate of $300 per hour, potential fees in controversy here are, at a minimum, $30,000, which only adds to the amount in controversy.

## Jury Verdicts Establish that Plaintiff's Claims Regularly Result in Damage Awards in Excess of $75,000

24.    Employment claims, such as those Plaintiff asserts, easily can result in jury verdicts in excess of $75,000.00 (exclusive of attorneys' fees).  To establish the amount in controversy, which can include both compensatory and punitive damages, a removing defendant "may introduce evidence of jury verdicts in cases involving analogous facts."  *Simmons*, 209 F. Supp. 2d at 1033-34 (finding it proper to consider evidence from various jury verdict reporters to establish the amount in controversy).  The following jury verdicts are illustrative:

- *Baghumian v. Cty. of Los Angeles*, Superior Court of Los Angeles, Case No. BC645040 (May 11, 2018) (Maureen Duffy-Lewis, J.).  The jury awarded $175,000 to plaintiff for noneconomic damages, among other damages, on his claims for disability discrimination, retaliation,

510319

13

and failure to prevent discrimination or retaliation under FEHA.  *See* RJN ¶ 2, Exh. 1.

- *Ismen v. Beverly Hosp.*, Superior Court of Los Angeles, Case No. BC366198 (Aug. 13, 2008) (Ernest M. Hiroshige, J.).  The jury awarded plaintiff $113,100 for emotional distress and $825,000 in punitive damages, among other damages, on her claims for disability discrimination, failure to accommodate and retaliation.  *See* RJN ¶ 2, Exh. 2.

- *Abarca v. Citizens of Humanity L.L.C.*, Superior Court of Los Angeles, Case No. BC521900 (March 9, 2017) (Frederick C. Shaller, J.).  The jury awarded plaintiff $550,000 for punitive damages alone, among other damages, on her claims for disability discrimination, retaliation, failure to prevent discrimination or retaliation, and wrongful termination.  *See* RJN ¶ 3, Exh. 3.

- *Storm v. Rite Aid Corp.*, Superior Court of Los Angeles, Case No. BC419584 (Nov. 14, 2013) (Michael L. Stern, J.).  The jury awarded in excess of $75,000 to plaintiff on his claim for wrongful termination in violation of public policy.  *See* RJN ¶ 4, Exh. 4.

- *Herzig v. Regina L. Edmond, M.D., Inc.*, Superior Court of Los Angeles, Case No. BC579970 (March 28, 2017) (Marc Marmaro, J.) The jury awarded in excess of $75,000 to plaintiff on her claims for disability discrimination, age discrimination, retaliation, and failure to accommodate.  *See* RJN ¶ 5, Exh. 5.

510319

25.     Although not identical in every respect, the foregoing cases contain enough similarities (*i.e.*, discrimination, retaliation, failure to prevent, failure to accommodate and wrongful termination) to establish that the jurisdictional minimum has been met.  *See Simmons*, 209 F. Supp. 2d at 1035 (stating that the "fact that the cited cases involve distinguishable facts is not dispositive" and that the cited cases "amply demonstrate the potential for large punitive [and emotional distress] damage awards").

26.     Accordingly, and for the aforementioned reasons, the amount in controversy exceeds the $75,000 jurisdictional threshold.

## **PROCESS, PLEADINGS AND ORDERS**

27.     Attached hereto as Exhibit "A" is a true and correct copy of the Complaint and Civil Case Cover Sheet, filed with the Superior Court of the State of California in and for the County of Riverside on November 5, 2021.

28.     Attached hereto as Exhibit "B" is a true and correct copy of the Summons, issued by the Superior Court of the State of California in and for the County of Riverside on November 5, 2021.

29.     Attached hereto as Exhibit "C" is a true and correct copy of the Certificate of Counsel, filed with the Superior Court of the State of California in and for the County of Riverside on November 5, 2021.

30.     Attached hereto as Exhibit "D" is a true and correct copy of the Notice of Case Assignment, assigning the case to department S303 of the Superior Court of the State of California in and for the County of Riverside for all purposes.

510319

NOTICE OF REMOVAL OF CIVIL ACTION

31.     Attached hereto as Exhibit "E" is a true and correct copy of the Proof of Service showing service on Staples on November 12, 2021.

32.     Attached hereto as Exhibit "F" is a true and correct copy of the Doe Amendment Plaintiff filed on December 7, 2021, substituting Staples with Staples the Office Superstore, LLC.

33.     Attached hereto as Exhibit "G" is a true and correct copy of Staples' answer to Plaintiff's Complaint.

34.     Attached hereto as Exhibit "H" is a true and correct copy of the Notice of Return Document filed by the Court on December 8, 2021.

35.     Staples is informed and believes that Exhibits "A" through "H" constitute all the process, pleadings, and/or orders filed and received by Staples in this action.

36.     On this day, or no later than the next business day, notice of this removal is being given to both Plaintiff and to the Clerk of the Riverside County Superior Court.  True and correct copies of these notices are attached hereto as Exhibits "I" and "J," respectively.  The proof of service of the Notice to Adverse Party of Removal will be filed with this Court immediately after the Notice is served on Plaintiff and the Superior Court filing is accomplished.

DATED:  December 9, 2021          KADING BRIGGS LLP

                                  By: _____
                                       SARAH R. MOHAMMADI

                                  Attorneys for Defendant
                                  STAPLES, INC.

510319

16

EXHIBIT "A"

# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Riverside on 11/05/2021 02:03 PM
Case Number CVSW2109438 0000004429125 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Vivian Arnold, Clerk

1   **BRENNAN S. KAHN, ESQ**. (SBN 259548)         [Space Reserved for Court Clerk]
    **GERARDO J. SOSA, ESQ.** (SBN 313627
2   **MICHAEL S. WALKER, ESQ.** (SBN 330373)
    **PERONA, LANGER, BECK, SERBIN & HARRISON, APC.**
3   300 East San Antonio Drive
    Long Beach, California 90807-0948
4   Phone: (562) 426-6155; Fax (562) 490-9823

5   Attorneys for Plaintiff, Victor Sanchez

6

7

8                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **FOR THE COUNTY OF RIVERSIDE - SOUTHWEST JUSTICE CENTER**

10

11  VICTOR SANCHEZ, an Individual,          **Case Number:**  CVSW2109438

12                 Plaintiff,               **COMPLAINT FOR:**

13         vs.                              (1)    Disability Discrimination;

14                                          (2)    Failure to Reasonably Accommodate;
    STAPLES, INC., a Delaware Corporation;
15  and DOES 1 through 10, Inclusive,       (3)    Failure to Engage in the Interactive
                                                   Process;
16                 Defendants.
                                            (4)    Failure to Maintain a Workplace Free
17                                                 From Discrimination and Retaliation;

18                                          (5)    Retaliation in Violation of FEHA;

19                                          (6)    Wrongful Termination in Violation of
                                                   Public Policy; and
20
                                            (7)    Wrongful Constructive Termination in
21                                                 Violation of Public Policy

22

23                                          **Jury Trial Demanded**

24

25

26

27         Plaintiff, Victor Sanchez, alleges as follows:

28  / / /

                                         -1-
                            COMPLAINT FOR DAMAGES

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this action pursuant to California Constitution Article VI, § 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other courts."  The statutes under which this action is brought do not specify any other basis for jurisdiction.

2.     Plaintiff has exhausted her administrative remedies by the timely request of a Right-to-Sue notice from the California Department of Fair Employment and Housing within three years of the events alleged herein.

3.     This Court has jurisdiction over all Defendants because, based on information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

4.     Venue is proper in this Court because, upon information and belief, one or more of the named Defendants reside, transact business, or have offices in this county and the acts and omissions alleged herein took place in this county.

**THE PARTIES**

5.     Plaintiff, Adrieanna Hooks (hereinafter "Plaintiff"), is a resident of San Bernardino County, in the State of California.

6.     Defendant, Staples, Inc. (hereinafter "Defendant"), was and is, upon information and belief, a Delaware Corporation doing business within the State of California and, at all times hereinafter mentioned, is an employer whose employees are engaged in commerce throughout this county and the State of California.

7.     Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1-10, but prays for leave to amend and serve such fictitiously named Defendants pursuant to California *Code of Civil Procedure* § 474, once their names and capacities become known.

-2-
COMPLAINT FOR DAMAGES

8.     Plaintiff is informed and believes, and thereon alleges, that DOES 1-10 are the partners, joint ventures, parent companies, owners, shareholders or managers or employees of Defendants and, therefore, were acting on behalf of Defendants.

9.     Defendant and DOES 1-10 will hereafter be collectively referred to as "Defendants."

10.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants are in some manner intentionally, negligently, or otherwise responsible for the acts, occurrences or transactions alleged herein.

11.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, all Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of Defendants were in accordance with, and represent the official policy of Defendants.

12.     Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each Defendant sued herein *(both named and DOE Defendants)* was the agent, servant, employer, joint venturer, joint employer, contractor, contractee, partner, division owner, subsidiary, division, alias, and/or alter ego with and/or of each of the remaining Defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, contract, ownership, subsidiary, alias and/or alter ego and with the authority, consent, approval, control, influence and ratification of each remaining Defendant sued herein.

13.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GENERAL ALLEGATIONS**

14.     Defendant is a retail sales and distribution company with stores and warehouses throughout the United States, including the state of California. At all times herein, Defendant is an employer with thousands of employees.

15.     From approximately January 2013 through April 2, 2021, Plaintiff worked for Defendant at its store located at 31686 Rosales Avenue, Murrieta, California 92563. At all times during his employment, Plaintiff was a devoted and loyal employee who performed who duties to Defendant's satisfaction.

16.     For the last few years of Plaintiff's employment with Defendant, after a number of promotions, Plaintiff worked for Defendant as its print and marketing production supervisor, with duties including send and replying to corporate e-mails, ordering supplies, supervising employees and assisting customers with direct sales. At all times while working as a marketing manager, the majority of Plaintiff's duties were supervisory and computer based with the minority of his duties requiring any form of manual or physical labor. As a supervisor, Plaintiff maintained the ability to direct the work of other employees to assist with any manual or physical labor where needed, or where Plaintiff ever needed any assistance.

17.     After working for Defendant for more than five (5)  years, beginning in or around June 2018 and continuing through June 2019, Plaintiff began experiencing ever increasing pain in his hand and wrist due to repetitive work activities. During this period of time, Plaintiff repeatedly informed Defendant of his workplace injuries, yet Defendant refused to report such workplace injuries as a worker's compensation claim, often sending Plaintiff to communicate to different human resources ("HR") representatives without any resolution and without referring him for any medical treatment. As such, for this approximate year, Plaintiff continued to suffer from physical pain as his injuries got worse all because Defendant refused to provide him the medical treatment it was obligated where an employee such as Plaintiff sustained a workplace injury.

/ / /

/ / /

COMPLAINT FOR DAMAGES

18.     After numerous complaints to Defendant's HR, on or about July 22, 2019, Plaintiff was finally permitted by Defendant to submit a formal worker's compensation claim. However, still, Defendant continued to deny Plaintiff the ability to seek any doctors, resulting in Plaintiff continuing to work for Defendant all to his ongoing pain and the worsening of his physical workplace injuries. Ultimately, because Defendant refused to take Plaintiff's workplace injuries seriously, Defendant forced Plaintiff to obtain legal representation to file a worker's compensation claim against Defendant, which Plaintiff did in March 2020.

19.     As a result of Plaintiff having obtained a worker's compensation attorney, Plaintiff was finally able to see a doctor after nearly two years of being denied one by Defendant. On or about August 14, 2020, Plaintiff visited his assigned worker's compensation doctor who diagnosed Plaintiff with carpel tunnel syndrome and placed him on restrictions of limited "repetitive forceful torquing, twisting, pushing, pulling and grasping with either hand." As a result of said diagnosis and physical work restrictions, Plaintiff had become physically disabled. Upon receiving said medical diagnosis and physical work restrictions, Plaintiff immediately informed Defendant of the same. In so doing, Plaintiff not only placed Defendant on formal notice of his physical disability, but also requested from Defendant reasonable accommodations in asking Defendant to allow him to continue to work under modified duty which would not violate his physical work restrictions.

20.     From approximately August 14, 2020 through September 18, 2020, Plaintiff returned to work for Defendant while under his doctor's physical work restrictions. However, despite being placed on physical work restrictions Defendant, via Plaintiff's store manager, refused to accommodate Plaintiff's restrictions. Instead of acknowledging Plaintiff's restrictions and ensuring he would not perform duties which would violate them, as it was obligated to do, Defendant required Plaintiff to perform all of these same physical tasks he had performed before being placed on restrictions without any modifications or accommodations, including loading copiers with paper, loading giant rolls of paper in large format printers and various maintenance tasks, in addition to Plaintiff's normal typing duties.
/ / /

21.     Throughout the August 2020 through September 2020 time frame, Plaintiff informed his store manager, Shawn, a number of times about not being accommodated, his restrictions being violated and being in ongoing physical pain, but nothing changed and Defendant continued to force Plaintiff to perform duties in violation of his physical work restrictions none-the-less. Consequently, at all times while Plaintiff worked for Defendant from August 14, 2020 through September 18, 2020, Defendant consistently forced Plaintiff to perform work in direct violation of his known physical work restrictions, thereby causing Plaintiff additional physical harm while ensuring that Plaintiff's physical injuries, rather than improving and/or healing, were exacerbated and only got worse.

22.     On or about September 15, 2020, Plaintiff then turned in a reasonable accommodation questionnaire Defendant had provided him for his physician to complete. In addition to his same restrictions of limited "repetitive forceful torquing, twisting, pushing, pulling and grasping with either hand," the form also limited Plaintiff to no lifting over 10 pounds. However, given that Plaintiff had already been limited to "limited" pulling, pushing and grasping with either hand, such a lifting restriction was already consistent with Plaintiff's restrictions at the time.

23.     Approximately three days later, and after having worked in violation of his restrictions for the prior month, on September 18, 2020, Plaintiff's store manager, Shawn, informed Plaintiff that Plaintiff was being forced out of work by Defendant. Specifically, Shawn informed Plaintiff that Defendant's HR had decided that Defendant was unwilling to accommodate Plaintiff's restrictions, so he would have to remain on medical leave for as long as such restrictions persisted. In response, in an attempt to keep working and keep earning the income he relied on, Plaintiff complained to Shawn that, since there were other subordinate employees available to assist Plaintiff, he could easily continue to perform his current job as a market manager in his department with their assistance so long as they were scheduled properly. As an alternative, Plaintiff also complained that he could work the manager on duty position overseeing the cashiers or perform direct sales to customers. In response to Plaintiff's attempts to remain at work, as opposed to being forced on an his

COMPLAINT FOR DAMAGES

restrictions, Shawn informed Plaintiff that Defendant's HR had decided it was impossible to accommodate Plaintiff and that there was nothing for Plaintiff to do within his restrictions. As the store manager, Shawn then also confirmed he personally agreed with HR's decision.

24.   In making the decision to force Plaintiff out of work on an involuntary medical leave, in violation of its obligations to do so, Defendant failed to engage in a good faith interactive process in order to exhaust all avenues to keep Plaintiff working and/or to accommodate him. At no time to present, whether before it made its decision or after it made its decision, has Defendant ever done any of the following so to fulfill its obligations on completing a good faith interactive process:

A.   At no time did Defendant ask Plaintiff, or his physicians, for clarification as to Plaintiff's work restrictions so to determine what his restrictions were with any specificity;

B.   At no time did Defendant offer Plaintiff the opportunity to have his restrictions clarified so to more specifically define which specific duties he could or could not perform associated with any specific position;

C.   At no time did Defendant offer Plaintiff any job descriptions of vacant or open positions for Plaintiff to review to see if there was an opportunity to work such jobs within his restrictions, whether on a permanent or temporary basis;

D.   At no time did Defendant consider reducing Plaintiff's hours so to schedule him alongside other employees whom could potentially perform any physical tasks Plaintiff could not perform on a limited basis, nor did Defendant consider the extent to which any co-workers could have assisted Plaintiff in helping him to continue to work within his restrictions; and

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

E.    At no time did Defendant ever look for any open or vacant positions at any of its stores or warehouses outside of the specific location Plaintiff worked to determine what, if any, other jobs might be available for Plaintiff to work, either on a temporary or permanent basis, as a reasonable accommodation.

25.    From approximately September 18, 2020 through March 24, 2021, Plaintiff remained on a forced medical leave against his will, all the while knowing there was work he could perform and an income he could continue to make where Defendant simply provided him the opportunity to. During this same period of time, all the while updating Defendant with monthly doctor's notes repeating his same restrictions by personally delivering them to his store, Plaintiff made a number of attempts to return to work both by making requests directly to his store manager, Shawn, and by calling Defendant's HR hotline in an attempt convince Defendant to allow him to return to work. However, Defendant wholly refused to engage in any interactive process with Plaintiff. Moreover, each time Plaintiff called Defendant's HR hotline, the HR representative refused to speak with Plaintiff, telling Plaintiff that, despite him still being a current employee, they would not speak with him due to him having hired a lawyer to represent him for his worker's compensation claim.

26.    At all times while on a forced medical leave from September 18, 2020 through the ultimate end of Plaintiff's employment on or about April 2, 2021, there remained a number of positions Plaintiff could have worked which would have reasonably accommodated Plaintiff had Defendant wanted to provide him the chance instead of discriminating against him by arbitrarily forcing him to remain on medical leave against his will. In truth, it was merely the case that Defendant kept Plaintiff on a forced medical leave to put financial and psychological pressure on Plaintiff in the hope that he would spare Defendant the decision of wrongfully terminating him by eventually quitting, going away on his own so that Defendant would no longer have to deal with a disabled employee under restrictions. For example, making no mention of the various other jobs which may have existed outside of Plaintiff's store and/or those within his store that Plaintiff had previously

COMPLAINT FOR DAMAGES

informed his store manager, Shawn, he could work, in or around January 2021, another position opened up at Plaintiff's store which would have perfectly accommodated him. However, as yet one more failure by Defendant to meets its obligations to engage in a good faith interactive process, no less to reasonably accommodate him, Defendant failed to provide this job to Plaintiff and, in fact, did not even consider him for it.

27.     In or about January 2021, as Plaintiff had each month since being placed on restrictions back in August 2020, Plaintiff went in person to his store to turn in another doctor's note. In ths instance, unlike all of the prior instances, the store manager, Shawn, was not at the store, so Plaintiff provided the note to the assistant manager on duty, Ken Outland, instead to then give to Shawn.

28.     While at the store providing his latest doctor's note to assistant manager, Ken Outland, in January 2021, Plaintiff also observed a posting for a new position as a greeter who would be responsible for standing and passing out masks to customers due to the COVID-19 pandemic.  Because Plaintiff's store manager, Shawn, was not present at the time, Plaintiff then spoke to Mr. Outland about the position instead, stating that he wanted to do the job. In front of Plaintiff, Mr. Outland then immediately called Shawn's cellular phone, who then picked up and spoke to Mr. Outland. While speaking to Shawn on the phone in Plaintiff's presence, Plaintiff heard Mr. Outland informing Shawn that Plaintiff was present and that Plaintiff wanted to fill the greeter position. In response, with Shawn still on the phone, Mr. Outland told Plaintiff that Shawn had said he would consider Plaintiff's request and later talk to Plaintiff about it. At all times, Plaintiff's request to fill the greeter position amounted to a request for a reasonable accommodation for his physical disability. However, ultimately, Shawn never followed up with Plaintiff, effectively ignoring Plaintiff's request and unjustifiably denying him such a reasonable accommodation instead.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

29.     In or about early or mid February 2021, Plaintiff again visited the store to provide his latest doctor's note with his same restrictions he had since August 2020. Since the store manager, Shawn, had never followed up with him about the greeter position, Plaintiff also hoped to see Shawn to speak with him about the greeter position in person. However, as with the prior month, Shawn was not at the store at the time, so was unable to have that conversation..

30.     On or about March 5, 2021, after receiving his latest doctor's note repeating the same restrictions he had been placed on ever since August 2020, Plaintiff again visited the store to turn in the doctor's note. In this instance, the store manager, Shawn, was present and so Plaintiff provided his latest doctor's note directly to Shawn. Upon finally seeing Shawn after him being absent the prior two months, Plaintiff took the opportunity to ask Shawn about the greeter position again. In response, Shawn confirmed the position existed, but, to Plaintiff's disappointment, also confirmed that, despite Defendant's obligation to give Plaintiff the job as an accommodation over an external candidate, an external candidate had been hired to perform the job and had been filling the role. At the same time, Shawn also stated to Plaintiff that, even if the position hadn't been filled by the external candidate, Defendant would still not give it to Plaintiff regardless at that time since Defendant had only planned to keep the job going for another few weeks.

31.     During this same March 5, 2021 conversation with his store manager, Shawn, in response to hearing that he had been unreasonably denied the reasonable accommodation he had asked for in the form of the greeter position, and hadn't even been considered for it, Plaintiff then asked Shawn why he hadn't been given the greeter position since he was being forced on medical leave and had asked to return to work numerous times ever since September 2020, even reminding Shawn of his attempts to return to work by contacting both him and Defendant's HR directly.  In rely, Shawn then admitted to Plaintiff that it was his decision to keep Plaintiff out of work, as he had told Defendant's HR that he believed, despite, at the least, the availability of the greeter position, there was nothing available which could accommodate Plaintiff's restrictions. Obviously upset with Shawn

COMPLAINT FOR DAMAGES

decision and revelation, Shawn then tried to calm Plaintiff by condescendingly telling Plaintiff it was "the best thing to ever happen to you" and that Plaintiff was basically on a "vacation," ignoring that Plaintiff was not receiving his full income during that time.

32.     About two week after the store manager, Shawn's, confession that it was him who had blocked Plaintiff's return the entire time, on or about March 16, 2021, Defendant informed Plaintiff that he had been on leave too long and, as a result, his dental and health benefits were about to be canceled. Knowing that he had done everything in his power to return and that there was work he could perform but was being arbitrarily denied, the loss of his health and dental benefits was the last straw. It became clear to Plaintiff that Defendant was simply doing everything it could to make him quietly go away by quitting so that it would no longer have to deal with his disability and/or restrictions, and that if he didn't take more direction action, the writing was on the wall he would not have a job to return to.

33.     Knowing that he needed his health and dental, and that he could go on much longer without his work and full income, Plaintiff then decided to make one last effort to save his job and return to work. On the same day of March 16, 2021, in an effort to finally be reasonably accommodated and save his job, Plaintiff sent the following discrimination complaint via e-mail to Defendant's corporate headquarter and corporate HR in the hope, where he had been ignored before, placing Defendant's corporate headquarters on notice of the discrimination would force Defendant to finally take some action to protect him:

> "To :    Staples Human Resources
> From:   Victor Sanchez
> Date:   March 16, 2021
>
> My name is Victor Sanchez. I have worked for Staples at the 32120 Highway 79 South store in Temecula, CA since 2013. Right now I have the title of print and marketing production supervisor. I currently have a medical condition that Staples has told me it cannot accommodate and so Staples has forced me out of work on medical leave ever since September 18, 2020 even though I could have been working this whole time because there are many jobs that I could do, especially if Staples was flexible about giving me assistance and accommodating my restrictions.

COMPLAINT FOR DAMAGES

I am writing this to contact any person in corporate or human resources at Staples so that someone can finally provide me with the help I need to return to work. For at least the last 7 months, I believe I have been discriminated against by being kept out of work without a good reason. I have asked to be allowed to return to work at least once every month since being forced to go on medical leave against my will, but Staples continues to not let me come back to work even though there is work I can perform. I have worked for Staples for almost 8 years as a loyal employee, so I don't think its  right to treat a long term employee like me this way.

I hope that by writing this Staples can finally do something about all of the issues I have had with being discriminated against. There are a lot of problems I've faced that I do not think I should have had to deal with.  I want to start by complaining about how I think I have been treated for the last two or so years. For about a year between 2018 and 2019, I noticed that I started feeling more and more pain in my wrist and my hand. I did my best to be a good worker and tolerate it, but it kept getting worse so I felt I had to report it because I needed medical help. I don't remember the date exactly, but July 2019 sounds about right as the time I reported it and Staples took my worker's compensation paperwork. When I reported it though, Staples tried to downplay my injuries. No one at Staples gave me any medical treatment or sent me to a doctor. When I talked to HR or the worker's compensation representative they always told me that I couldn't see my own personal doctor because it was a work related injury. So for basically a year I just stood by working in more and more pain waiting for Staples to finally send me to a doctor. I tried to be a good employee and keep it in house, but since Staples wasnt doing anything, thats why about 6 months after I reported my injury I hired my worker's compensation attorney around March 2020. I didn't want to hire an attorney for my injuries but I had no choice because I needed to see a doctor and Staples wasnt doing anything to help me even though it was supposed to, which just made my medical issues worse.

Because Staples was forced to let me see a doctor once I got an attorney for my injuries, I finally was able to see a doctor in August 2020. That's when my doctor put me on my work restrictions which have been the exact same ever since. They are still the same right now. My restrictions have always been no repetitive forceful twisting, pushing, pulling, or grasping with either hand. Even with my restrictions I can still lift things and move things. I can still type with my hands. I just cant do anything that would be too severe like lifting tons of weight or twisting my hands into positions in major ways. At least 50-60% of my job as a manager has just been on the computer which I can still do. Since I can still be on the computer and since I can still lift and move most things, I think even with my restrictions I can still do 80-90% of my job. I just need help with moving or putting away larger things which shouldnt be a problem because there are always other employees at my store who can do those things for me.

I was happy to finally see a doctor in August 2020 but that created the next problem I have had with Staples which is about how I think my restrictions have been used against me ever since I got my restrictions even though my restrictions don't really affect my ability to do my work much.  For about a month between August and September 2020, my manager Shawn allowed me to continue to work at the store but during that time I was not accommodated. All I needed was help to move larger

COMPLAINT FOR DAMAGES

items but I didn't get the help. I don't know why this happened, but even though there were employees scheduled to work in my department and were being paid from my department's budget, they didn't actually work in my department with me. Those employees were moved to work cashier or help out on the floor away from me, so most of the time I was left alone without any help during that month. For the most part, I was fine because I could still do most of my duties, but there were still a bunch of things I was forced to do that violated my restrictions and caused me more pain like loading the rolls of paper into the large format printers, loading paper into the printers, and a few other physical maintenance things I had to do. I was happy to still be allowed to work so I didn't really want to complain, but I did tell Shawn a bunch of times that I was in pain doing those things.

The next problem happened when Staples forced me out of work all of a sudden for no reason. Even though I worked under my restrictions for about a month, on September 18, 2020 (which is the last day I have been allowed to work), Shawn told me that Staples couldn't accommodate me and said I had to go on medical leave. This made no sense to me though since I had been on the same restrictions for the last month and worked the entire time. I also knew I could continue to do my job if I just got the little help I needed. I told Shawn that I could continue to oversee my department if he just made sure the associates assigned to my department stayed working in my department to help me. I also asked him if I could do other jobs that I knew were available and that I could still do at the store even with my restrictions. I remember specifically asking him about being the manager on duty and doing more direct sales to customers, but he just repeated to me that HR said there was nothing I could do with my restrictions and that he agreed with HR's decision. I told him I didn't agree but there was nothing I could do to change his mind. Shawn just said that HR had decided I couldn't work and that he agreed with that decision.

When I was forced on leave by Staples back on September 18, no one at Staples including Shawn or anyone in HR talked to me about any ways to keep me working. No one from Staples talked to me about any alternative jobs or anything. So long as it didn't affect my benefits or lower my hourly rate of pay (which I have spent a long time working at Staples to get to), I would have even gone part time if that helped (even though I know that would mean less income overall) but Shawn made it 100% clear to me that no suggestion I made would be considered even a little. Staples made the decision to force me on medical leave no matter what other options there were. That wasn't fair or right. It still isn't since I'm still out on medical leave for no good reason.

Because Staples has forced me on medical leave, I haven't made any Income since September 2020 even though I think I should have been working this whole time. Every month since September I've come into the store to provide Staples with my doctors note with my same restrictions. Every time I come in, I've asked about jobs I can do to come back to work but Shawn continues to shut me down every time. The only two times Shawn wasn't there was when I came in January and February 2021. That's when I started texting Shawn my doctor's notes too because those two months he said he didn't get the notes even though I dropped my doctor's notes off at the store.

-13-

COMPLAINT FOR DAMAGES

That first time I in January 2021 when I dropped off the note, I gave it to my assistant manager, Ken Outland, to give to Shawn. That's also when I learned that the store had created a new position for a greeter at the door who greets customers and discusses PPE safety. No one at Staples had ever informed me of this position even though I could definitely do it. I had to learn on my own. Ken even told me that I should do that job, so while I was standing there Ken then called Shawn in front of me saying that I should be given that job. However, when Ken got off the phone with Shawn, he told me that Shaw said that he "would see" and that Shawn would talk to me about it later. Shawn never did that though. The next time I saw Shawn was last week on March 5, 2021 when I turned in my latest doctor's note with my same usual restrictions. I asked Shawn about that greeter position and why I hadn't been offered it. I told him I would still work it if I could. He didn't answer why I didn't get the chance to work it. He just told me it was too late to give it to me since the job was only expected to last the next couple of weeks.

When I spoke with Shawn last week on March 5, he also told me that Staples HR had reached out to him 3 weeks before in the middle of February 2021 asking why I wasn't working and why I wasn't being accommodated. He then said that he told HR there was nothing that could accommodate me, even though that's not true. This was a surprise to me because Shawn had originally told me back in September 2020 that HR was the one who made the decision to not accommodate me, and that he just agreed. He didn't tell me it was him who had decided. I then complained to him again like I do every time I see him that I want to come back to work, but then he told me that I should feel lucky to be out. He said that I am basically on vacation and that my injury was the best thing to happen to me because I get my worker's compensation payment. I told him though that the worker's compensation payments don't give me what I would normally make. I'm actually struggling financially because I'm not allowed to work.

I just feel like because I have my medical issues and restrictions Staples doesn't want me to return and is trying to just wait me out to see if I quit rather than doing the right thing by accommodating me like it should. I like my job though and I want to keep it. I've tried to talk to HR about this but I've never been able to complain about not being accommodated or being discriminated against like I am now because every time I have called HR since September, they just tell me immediately tell me they can't talk to me before I can really say anything. When I call HR, I have to put my employee ID number into the system, so when the HR person picks up (who is like a different person every time I have called) they just tell me that since I have a lawyer in my worker's compensation case, they can't talk to me and that I have to talk to my lawyer. I don't even get their names most of the time or a way to email anyone which is why I'm sending this to everyone in HR I could find on google. I don't know who to write to. I know Staples isn't supposed to talk to me about my worker's compensation lawsuit but that's an entirely different thing than talking to me about my employment status. I'm still an employee of Staples, so Staples shouldn't be able to ignore me when I want to talk about being accommodated, or when I want to complain about being discriminated against or when I am just asking about my work status and trying to get back to work. That's what is happening though. That's another reason it feels like Staples wants me to quit. Staples just hopes that I go away. If I'm

-14-

COMPLAINT FOR DAMAGES

not fired, then Staples should be able to talk to me about my work and me coming back to work, but it won't. It makes me feel like I've already been fired for being disabled and I just don't know it yet. No one will talk to me which is why I have to send this email. It's the only way maybe someone will actually listen and do something.

I do not want to lose my job with Staples. I've worked hard to be where I am over the last 8 years. I don't want to just throw 8 years away. I want to keep growing with the company and move up in the company like I have before, but I also can't sit here not making any money because Staples won't let me come back no matter what I do. I know there are jobs I can do at Staples right now, including my own if I just get the little help I need. But if Staples keeps me out of work just because it doesn't want to deal with a disabled employee like me, then I think that's discrimination and that's basically the same thing as firing me. What else do you call it when your employer won't allow you to work when there is work you can do and won't talk to you no matter how many times you try? That's being fired, right? I really don't want to move on, but if Staples doesn't allow me to come back to work by the end of this month, then I'm going to take it as Staples letting me go, so I'll file for unemployment and start looking for another job. Its been more than 6 months already. I can't wait any more for Staples to do the right thing. I've already waited long enough. I need to work and make an income even if that means I do it for someone else.

Sincerely,

Victor Sanchez"

34.    Two days after sending his discrimination complaint via e-mail to Defendant's corporate headquarters, one of Defendant's corporate HR Business Consultants, Marry Kenney, called Plaintiff. Rather than addressing any of Plaintiff's complaints, Ms. Kenney simply informed Plaintiff that she was going to e-mail him an accommodation form for him to fill out. Plaintiff immediately informed Ms. Kenney that he had already filled out the accommodation form in September 2020 and that nothing had changed since then in terms of his restrictions. Still, Ms. Kenney, as Defendant's corporate HR representative, arbitrarily told Plaintiff he would have to have his doctor fill out the same form again. Later that same day, Ms. Kenney then sent Plaintiff an e-mail confirming the same.

35.    Defendant's response was wholly inadequate, instead of discussing his specific complaints or confirming that his complaints would be investigated, it appeared to Plaintiff that Defendant was simply giving him a run-around that would inevitably leave him in the same place, forced on a medical leave and not being reasonably accommodated. Thus, in response to Ms. Kenney's e-mail, Plaintiff e-mailed Ms. Kenney a complaint of the same:

-15-

COMPLAINT FOR DAMAGES

"Mary,

Thank you for calling me, but I do not feel better at all. Honestly, I feel even worse. You didn't talk to me about any of my concerns. All you said is for me to fill out the accommodation paperwork and then Staples will let me know what my options are, but I just looked over the paperwork you sent and its the EXACT SAME paperwork I already filled out 7 months ago back in September. Why do I need to fill this all out again when Staples already has all of this information? Nothing has changed since the first time this was filled out in September. My restrictions are exactly the same. Staples knows that since I've been providing Staples with my doctor's notes with my EXACT SAME restrictions every month since September. I shouldn't have to continue to jump through hoops just to keep my job and be accommodated. I feel like I'm just being made to jump through hoops that won't change anything. I understand you said once I fill it out you can tell me my options, but since Staples already has the information, Staples should be able to respond immediately instead of making me wait a second longer.

This just makes me feel hopeless. I feel like Staples isn't serious and the writing is on the wall that nothing will be done. I still will try to see if my doctor can fill it out for me because I want to do everything I can to come back even if I shouldn't have to but I can't control how fast my doctor fills it out or gets it back to me even if I can get it back. I've also been patient long enough. Like I said in my last email, if Staples doesn't bring me back by the end of the month its going to force me to look for another job. I'm sorry but I just can't wait any longer. I have to start earning money somehow, so please do something to fix this situation now.

Victor Sanchez"

36.     Despite believing the process to be futile, in order to ensure he did everything he could to keep his job and return to work, Plaintiff immediately contacted his doctors to have them fill out the accommodation request form one more time. Thereafter, the morning of March 23, 2021, Ms. Kenney, on behalf of Defendant, then called Plaintiff. While informing Plaintiff that Defendant had received the completed accommodation form filled out by his doctors on March 22, 2021, as Plaintiff had expected, Ms. Kenney then simply confirmed that, in light of what the form stated, Plaintiff would not be brought back to work and there was nothing Plaintiff could do. In response, Plaintiff immediately complained that the decision was not fair, especially since he hadn't even seen the form yet, didn't know what was on it and didn't know what restrictions Defendant had a problem with. Plaintiff also responded with a number of suggestions as to duties he could perform, but Ms. Kenney outright dismissed his suggestions without any further discussion, falsely stating that his

-16-

1    duties could not be modified because that would essentially be creating a new job for him.

2        37.    Later that same morning of March 23, 2021, Ms. Kenney then e-mailed Plaintiff

3    confirming Defendant's receipt of the completed accommodation form, with a copy of the

4    completed form attached to the e-mail. Upon reviewing the form, despite Ms. Kenney having

5    implied that the form reflected some kind of change in Plaintiff's restrictions, Plaintiff was

6    surprised to find that none of the restrictions had changed, just as he had previously

7    represented, and, so, the form contained the exact same information as the same form he

8    submitted on September 15, 2021. Upset that Defendant had made Plaintiff go through its

9    process unnecessarily only to be left with the same decision, Plaintiff then e-mailed

10   Defendant's corporate HR, through Ms. Kenney, another discrimination complaint via e-mail:

11   "Mary,

12   I'm really upset about our call today. When you called me today, you said
     that my doctors had already sent Staples my accommodation paperwork
13   yesterday. I didn't even get a copy of it first though so I didn't know what
     was actually on it when we were talking on our call, but you told me that
14   looking at it there was nothing Staples thought I could do to work. That's
     a total lie though.
15
     I just got your email with my 3.22.21 accommodation form. Thanks for
16   sending it to me so I can see what is on it but it still states the EXACT
     SAME restrictions I've had this entire time! You made me feel like it was
17   something different when its the exact same restrictions I've always had.
     I compared what was written on the 3.22.21 form to what was written on
18   my 9.15.20 accommodation form and they say the EXACT SAME thing.
     Just look for yourself. Like I've been saying this whole time, you can look
19   at the 9.15.20 accommodation form, my 11.5.20 form from Cigna, the
     doctors notes I've been giving to Staples every month for the last 7
20   months or this 3.22.21 accommodation form and they all have the EXACT
     SAME restrictions. My restrictions have always been the same since
21   September 2020.

22   It wasn't right for you on the phone to act like my restrictions were different
     or something when they are still the same they've always been. You also
23   said in your last email that you thought my restrictions weren't clear
     enough but I think that's just another excuse. My restrictions have always
24   been no repetitive forceful twisting, pushing, pulling, or grasping with either
     hand, and no lifting anything over 10 pounds. What's not clear about that?
25
     These are the only restrictions I have ever had and the ones I still have
26   right now. If Staples tries to act like I have more restrictions than what it
     actually says on these forms then that would just show me even more that
27   Staples isn't serious about bringing me back. I've been working for Staples
     a long time and I know managers sometimes act like restrictions are worse
28   then they are just to not have to bring an injured associate back, so please

-17-

COMPLAINT FOR DAMAGES

don't try to do that with me. Like I see that my doctor mentions me struggling with typing. My doctor and I did talk back in September about how I did sometimes have a little trouble with typing or sorting papers, but that doesn't mean those have ever been a part of my actual restrictions. That was just a small issue which is why typing and sorting papers were not written in by my doctor as part of my actual restrictions back in September and they aren't part of my restrictions on the 3.22.21 form either. I can still type, sort papers and basically do almost everything I would normally be asked to do. I just can't push, pull or lift things that are over 10 pounds or do repetitive forceful stuff like it says on the paperwork. I want to make sure we are on the same page about that. That's 100% what my medical paperwork says. I'm going to say it again just like I said on the phone to you today. The majority of my duties as a manager are on the computer and I can still do them since I can type and do computer work like normal. When I have to do physical stuff, most of the things I have to lift as a manager are under 10 pounds. The associates do most of the heavy lifting (as long as I get to keep them in my department and they aren't moved around like before). That's why I can still do at least 80%-90% of my job even with these restrictions, so there has never been a good reason for Staples to force me out on medical leave.

You basically told me on the phone that changes my duties just this little bit to accommodate me would be like giving me an entirely new job. That's not true at all. Just asking for help with the 10-20% of things I can't do isn't changing my job around especially when there are always employees who can easily do those things for me if I am just allowed to keep them in my same department when I'm working. Really, it just felt like you were making excuses for Staples and didn't want to even consider bringing me back to work no matter what I said.

Its just more of the same stuff that I've had to deal with this whole time. Just like it says on my 11.5.20 cigna paperwork, the only reason I've been on leave is because Staples won't accommodate my restrictions by giving me modified duties to keep me working even though it would be easy for Staples to do. It hasn't been my choice to be on leave. Staples could have modified my duties just a little to keep me working but it has never wanted to accommodate me so didn't. That's exactly what you are doing now. This isn't just how I "feel". These are the facts and its not right. That's why its discrimination.

When we ended our call, you said you still didn't think I could be accommodated but you would do a little more research. It feels like the decision has already been made, but I'm willing to wait until the end of the month before trying to find another job. Staples has always had what it needs to bring me back and it still does now. I need to start working so just like I said before if Staples can't bring me back by the end of the month I'm taking that as being fired. Nothing has changed and I shouldn't have to wait any longer. I'm sorry but 7 months is long enough already.

If there are other people I can email in HR or in corporate above you that I can get involved in this to make things right, please let me know now too. I'm just trying to do everything I can to keep my job so I can get back to earning my income. I don't know what else to to do so if you can't fix this without any more time going by then I want someone else above you to investigate and do something instead.

-18-

COMPLAINT FOR DAMAGES

1     Sincerely,

2     Victor Sanchez"

3

4     38.    The next day, March 24, 2021, Ms. Kenney then e-mailed Plaintiff back

5   accusing Plaintiff of having mischaracterized and misrepresenting their conversation.

6   Knowing that his summary of their conversation was 100% accurate, Plaintiff then e-mailed

7   Ms. Kenney back that same day, essentially telling her that what he wrote was true and that

8   if she didn't like the things she said, she shouldn't say them. Notably, while Plaintiff's March

9   23, 2021 e-mail also asked if there were others in HR Plaintiff could speak to and also

10  asking that his complaints of discrimination be investigated, Ms. Kenney did not refer Plaintiff

11  to any other individuals he could speak to, nor did Ms. Kenney address Plaintiff's request for

12  an investigation. Rather, at no time did Defendant ever conduct any investigation into any of

13  Plaintiff's discrimination complaints in direct violation of its obligations to do so.

14     39.    After unjustifiably being denied work for seven months, Plaintiff's March 2021

15  complaints to Defendant's corporate offices and HR made it clear that if Defendant did not

16  bring Plaintiff back to work by the end of March 2021, he would take that as being fired and,

17  thus, begin looking for new employment. As of April 2, 2021, Plaintiff had not received any

18  further communications from Defendant despite Plaintiff's deadline, leaving Plaintiff with the

19  Defendant's last representation that it still would not bring him back to work. Desperate to

20  receive his full income and regain a sense of accomplishment through a full day's work, left

21  with being denied avaiable work once again, Defendant's silence was the last straw.

22     40.    Despite his verbal complaints over the prior seven months and his numerous

23  formal March 2021 complaints to Defendant's corporate offices, Plaintiff realized that no

24  matter what he did or whom he asked, Defendant would continue to discriminate and

25  retaliate against him until he finally agreed to quietly go away by resigning. Plaintiff had done

26  everything he could do to keep his job, but, also knowing he would not receive his income for

27  the indefinite future, he realized he had been left with no option but to give Defendant what it

28  wanted - he would have to quit. Defendant intentionally created circumstances - forced

-19-

COMPLAINT FOR DAMAGES

medical leave and depravation of benefits - that forced him to quit, as any reasonably

objective person in his same or similar circumstances would have. Accordingly, on April 2

2021, Plaintiff sent a final e-mail to Defendant, its corporate headquarters and its HR

complaining a final time of the unlawful conduct and confirming his constructive termination:

"Mary,

I have been very very patient trying everything I can to keep my job but its been almost 8 months now since the last time I was allowed to do any work for Staples even though there has always been work I could be doing and income I could be making this entire time. I have no more money in my bank account. I'm not receiving workers compensation benefits and not making any income because Staples wont allow me to work. I've been asking to come back the entire time and nothing happens. I'm just ignored because Staples wants me to go away. Its also been almost 3 weeks now since I complained to HR corporate and not a single thing has happened except that you basically confirmed last time we talked that Staples couldn't accommodate me but you would double check or something. That was more than a week ago too.

I told you that I couldn't last past the end of March, so if I wasn't brought back by the end of March, I'd take that as Staples firing me. That's exactly what's happened. I'm still sitting here with no job after 8 months for no good reason which means I've been fired. If that wasn't true, you all would have done something by now to make this right and get me back to work.

Since its Staples isn't bringing me back, I have no job and so I have to I have to go find a job somewhere else. I'm going to file for unemployment now and tell them that Staples fired me for being disabled because that's the truth and we both know it. I have no other choice. There isn't anything else I can think of that I can do to keep my job and I need some income from somewhere. I have tried everything I could to make Staples do the right thing, so please talk to whoever you have to talk to and tell them not to deny my application for unemployment. I have to file for unemployment now or else I'm going to end up on the street if I don't get my benefits. Staples has hurt me enough so I think the least it can do is let me have my unemployment benefits.

Victor Sanchez"

41.    After violating Plaintiff's known restrictions for an entire month, all to his

increased physical harm, from September 18, 2020 through the date of his forced

resignation on April 2, 2021, Defendant refused to reasonably accommodate Plaintiff despite

its ability to do so without suffering undue hardship. After denying Plaintiff the ability to return

to work for so long without any justification, Defendant ignored Plaintiff's repeated verbal

complaints and then effectively ignored his formal written complaints as well, at all times

COMPLAINT FOR DAMAGES

refusing to conduct any investigation of Plaintiff's claims of discrimination. All the while, Defendant starved Plaintiff of both the income and benefits he relied on, using the same as pressure to try to force Plaintiff into resigning from his near decade-long career with Defendant. Defendant's efforts were ultimately successful, concluding with Plaintiff's actual and/or constructive wrongful termination. Defendant's discriminatory and/or retaliatory conduct placed Plaintiff in the position where he had no choice but to resign, thereby actually or constructively wrongfully terminating him.  It is clear by this history that Defendant wrongfully terminated Plaintiff because he was disabled, Defendant perceived him to be disabled, he requested reasonable accommodations and/or Defendant believed Plaintiff would continue to be disabled and need reasonable accommodations in the future.

42.    While Plaintiff was wrongfully terminated, to the extent it appears that Plaintiff resigned, Plaintiff alleges that he was forced to resign as no reasonable or objective person in Plaintiff's position would have continued to remain employed by Defendant without any hopes of being provided with additional work and, thereby, no hope of income.  Due to Defendant's wrongful conduct, one way or the other it was inevitable that Plaintiff would have lost his job. Thus, even where one could argue that Plaintiff was not actually terminated, it is clear that, at the least, he was constructively wrongfully terminated.

43.    At all times, Plaintiff informed Defendant of his disabilities and updated it as to his medical status. Likewise, Plaintiff could have performed all of the essential functions of his job with a reasonable accommodation which he requested of Defendant numerous times and which Defendant could have provided without suffering undue hardship, whether at the same location or another one of Defendant's many nearby stores, to Defendant's satisfaction with a reasonable accommodation. Despite these facts, and that Defendant could have accommodated Plaintiff without suffering undue hardship, Defendant rejected his requests, failed to engage in the interactive process with him and failed to reasonably accommodate Plaintiff as it was obligated to do under California law. Instead of placing Plaintiff in another available alternative position or providing Plaintiff with minimal modified job duties, Defendant simply chose to ignore Plaintiff's reasonable requests, ignore his complaints,

COMPLAINT FOR DAMAGES

failed to engage in any interactive process and failed to provide her with reasonable accommodations, all the while unnecessarily forcing Plaintiff on an indefinite medical leave and depriving of him of income and benefits, all leading to his actual and/or constructive wrongful termination. In sum, Defendant unlawfully denied Plaintiff the interactive process he was owed, unlawfully denied Plaintiff the reasonable accommodations he was owed, unlawfully discriminated against Plaintiff, unlawfully retaliated against Plaintiff and actually or constructively wrongfully terminated him based his actual or perceived disabilities and/or requests for reasonable accommodations.

44.     At all times, Defendant's conduct, as described above, was enacted maliciously and in total disregard and oppression of Plaintiff's rights and welfare. As a result of these circumstances, Plaintiff has been damaged economically by both the loss of his current and future employment with Defendant. Plaintiff has also been damaged emotionally and physically through Defendant's unlawful conduct. The full extent of Plaintiff's damages will be subject to a matter of proof at trial.

**<u>FIRST CAUSE OF ACTION</u>**

**DISABILITY DISCRIMINATION**

**(Against All Defendants and DOES 1- 10)**

45.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

46.     At all times relevant to this action, Plaintiff had physical disabilities within the meaning of *Government Code* §§ 12926(m) and 12926.1, and the California Fair Employment and Housing Act (FEHA).

47.     Plaintiff is informed and believes, and based thereon alleges, that, in addition to denying Plaintiff reasonable accommodations he was owed, Defendant actually and/or constructively terminated Plaintiff because of his disabilities and/or because it believed him

to be disabled in violation of the FEHA and California *Government Code* § 12940 (a).

48.     At all times, Defendant was aware of Plaintiff's disabilities, as set forth above, because Plaintiff had informed Defendants of his disabilities and requests for reasonable accommodation numerous times prior to the conclusion of his employment.

49.     Defendant discriminated against Plaintiff on the basis of his disabilities by, *inter alia*, forcing him onto an indefinite leave of absence, failing to provide reasonable accommodations to Plaintiff despite the availability of such without undue hardship, applying unlawful policies to Plaintiff, actually and/or constructively terminating his employment, etc.

50.     At all times mentioned herein, Plaintiff was willing and able to perform the essential duties and functions of his position and/or other positions at Defendant's stores or warehouses which were available at the time, which Plaintiff was qualified to perform and which would not have violated his physical work restrictions.

51.     At all times, Defendant knew, or should have known, that the conduct, acts, and failures to act of Defendant and/or Defendant's executives, owners, supervisors, agents and employees, as described herein above, violated Plaintiff's rights under the law. Likewise, Defendant knew, or in the exercise of reasonable care should have known, that unless Defendant intervened to protect Plaintiff, and to adequately supervise, prohibit, discipline, and/or otherwise penalize the conduct, acts, and failures to act of Defendant and others as described herein, Defendant's failure to so protect, supervise, and intervene would have the effect of encouraging, ratifying, condoning, increasing and/or worsening said conduct, acts, and failures to act, which is, in fact, what resulted.

52.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

/ / /

COMPLAINT FOR DAMAGES

53.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

54.     The conduct of Defendant in discriminating against Plaintiff because of his physical disabilities subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to Plaintiff. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

55.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which he is entitled to recover pursuant to California *Government Code* § 12965.

## SECOND CAUSE OF ACTION

### FAILURE TO REASONABLY ACCOMMODATE

### (Against All Defendants and DOES 1- 10)

56.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

/ / /

/ / /

-24-

COMPLAINT FOR DAMAGES

57.     At all times relevant to this action, Plaintiff had physical disabilities within the meaning of *Government Code* §§ 12926(m) and 12926.1, and the California Fair Employment and Housing Act (FEHA).

58.     At all times, California *Government Code* §12940(m) requires employers to provide an employee with a known physical disability with a reasonable accommodation for said disability. After being diagnosed with physical disabilities, as described herein, Plaintiff requested reasonable accommodations in the form of work restrictions, modified work duties, alternative work assignments and other potential accommodations. Despite learning of Plaintiff's physical disabilities, learning of his requests for reasonable accommodations and being able to accommodate Plaintiff as he requested without suffering undue hardship, Defendant failed and refused to reasonably accommodate Plaintiff's needs based on his disabilities and, instead, retaliated against Plaintiff and actually or constructively wrongfully terminated Plaintiff from his employment.  In doing so, and failing and refusing to accommodate Plaintiff, Defendant violated *Government Code* §12940 (m).

59.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

60.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

61.     The conduct of Defendant in failing to reasonably accommodate Plaintiff subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future.

-25-

COMPLAINT FOR DAMAGES

Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to Plaintiff.  Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

62.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which he is entitled to recover pursuant to California *Government Code* § 12965.

## THIRD CAUSE OF ACTION

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

### (Against All Defendants and DOES 1- 10)

63.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

64.    At all times relevant to this action, Plaintiff had physical disabilities within the meaning of *Government Code* §§ 12926(m) and 12926.1, and the California Fair Employment and Housing Act (FEHA).

65.    After learning of Plaintiff's physical disabilities, Defendant failed to engage in an interactive process with Plaintiff to exhaust all possibilities in determining whether Defendant could reasonably accommodate Plaintiff's disabilities and/or grant his requests for reasonable accommodations, including, but not limited to, his requests for work restrictions, modified work duties and/or alternative work assignments.  In failing and refusing to engage in an interactive process with Plaintiff, Defendant violated *Government Code* §12940 (n).

/ / /

COMPLAINT FOR DAMAGES

66.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

67.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

68.     The conduct of Defendant in failing to engage in the interactive process with Plaintiff subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to Plaintiff. Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

69.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which he is entitled to recover pursuant to California *Government Code* § 12965.

/ / /

/ / /

/ / /

-27-

COMPLAINT FOR DAMAGES

**FOURTH CAUSE OF ACTION**

**FAILURE TO MAINTAIN A WORKPLACE FREE FROM**

**DISCRIMINATION AND RETALIATION**

**(Against All Defendants and DOES 1- 10)**

70.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

71.     Defendant failed to take immediate and appropriate corrective action to prevent and remedy the discrimination and/or retaliation to which Plaintiff was subjected to. Specifically, Defendant set forth policies and procedures, and failed to properly train its employees, as to relevant disability discrimination and reasonable accommodations laws, which not only failed to prevent discrimination in the workplace, but actually created a discriminatory work environment. Likewise, by discriminating against Plaintiff while he was still employed due to his disabilities and/or requests for accommodation, failing and refusing to conduct any investigation of his complaints of discrimination, retaliation and/or failure to reasonably accommodate, actually and/or constructively wrongfully terminating him, and/or retaliating against him  based on his disabilities, his requests for reasonable accommodations and/or his complaints, Defendant failed to take immediate and appropriate corrective action to prevent and/or remedy the discrimination and retaliation to which Plaintiff was subjected to.

72.     At all times, Defendant knew of its legal obligations to maintain legally compliant policies and procedures, knew of its obligations to properly train its employees as to employees with disabilities, knew of its legal obligations to conduct a prompt investigation of Plaintiff's complaints, knew of Plaintiff's disabilities and knew of its legal obligations to reasonably accommodate Plaintiff's disabilities, but disregarded all these duties and, instead, retaliated against Plaintiff and, ultimately, actually or constructively terminated him. Rather than taking reasonable steps to prevent discrimination and retaliation, Defendant

-28-

COMPLAINT FOR DAMAGES

continued to discriminate and retaliate Plaintiff through the end of Plaintiff's employment.

73.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

74.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

75.     The conduct of Defendant in failing to prevent and/or remedy discrimination and/or retaliation in Plaintiff's workplace subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to Plaintiff.  Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof pursuant to California *Government Code* §§ 12965 & 12970.

76.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees which he is entitled to recover pursuant to California *Government Code* § 12965.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIFTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF FEHA**

**(Against All Defendants and DOES 1- 10)**

77.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

78.     Plaintiff engaged in protected activities by informing Defendant of his disabilities and by requesting reasonable accommodations to treat and/or recover from her disabilities, including requesting work restrictions, modified work duties and/or alternative work assignments. Plaintiff also engaged in protected activities by complaining to Defendant of being discriminated against and/or retaliated against on the basis of his disabilities and requests for reasonable accommodations, including Defendant's refusal to reasonably accommodate him. Defendant, acting at least partially in direct retaliation for Plaintiff having engaged in these protected activities, as described above, retaliated against Plaintiff by refusing to accommodate him, by refusing to engage in a good-faith interactive process with her, by forcing Plaintiff on an unnecessary medical leave, by refusing to conduct any investigations, by depriving Plaintiff of income and benefits without justification and by actually or constructively wrongfully terminating Plaintiff from his employment.

79.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

1    80.    As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has

2  sustained and continues to suffer both emotional and physical injury, including emotional

3  distress, related emotional trauma, personal injury, physical harm, pain and suffering,

4  personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to

5  be shown according to proof.

6    81.    The conduct of Defendant in retaliating against Plaintiff subjected Plaintiff to

7  cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by

8  Defendant that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed

9  and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was

10 done with an intent to cause injury to Plaintiff.  Moreover, the malicious, fraudulent and/or

11 oppressive conduct was engaged in, authorized or ratified by officers, directors or managing

12 agents of the corporation and/or was the result of the application of unlawful, malicious or

13 oppressive policies and procedures.  As a consequence of the aforesaid oppressive,

14 malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a

15 sum to be shown according to proof pursuant to *Government Code* §§ 12965 & 12970.

16   82.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees

17 which he is entitled to recover pursuant to California *Government Code* § 12965.

18

19                    **<u>SIXTH CAUSE OF ACTION</u>**

20          **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

21                **(Against All Defendants and DOES 1 - 10)**

22   83.    As a separate and distinct cause of action, Plaintiff complains and realleges all

23 the allegations contained in this complaint, and incorporates them by reference into this

24 cause of action as though fully set forth herein, excepting those allegations which are

25 inconsistent with this cause of action.

26 / / /

27 / / /

28 / / /

-31-

COMPLAINT FOR DAMAGES

84.     California law prohibits termination or other adverse employment actions against employees for reasons that violate public policy.  Plaintiff is informed and believes and thereon alleges that Defendant violated public policy by terminating his employment for reasons that violate public policy of the State of California.

85.     Defendant's termination of Plaintiff's employment violated California statutes and/or common law that inure to the benefit of the public at large and are a statement of California public policy, including, but not limited to, the FEHA, *Government Code* § 12940 et seq. and other related statutes and common law. These laws, statutes and their interpretative regulations inure to the benefit of the public at large, and embody fundamental public policy of the State of California and/or the United States.

86.     During Plaintiff's employment with Defendant, Plaintiff informed Defendant of his disabilities and his need for reasonable accommodations. In response, Defendant took actions to discriminate and retaliate against Plaintiff, including keeping him employed for nearly eight (8) months on a forced unnecessary medical leave without offering him any work despite his ability to work and the availability of such work, all the while depriving him of both income and benefits without justification. At all times, Defendant engaged in such conduct as a means of either actually terminating Plaintiff or, alternatively, constructively terminating him by forcing Plaintiff's resignation. Under such circumstances, there is little doubt that Plaintiff was either actually or constructively wrongfully terminated.  By either actually or constructively discharging Plaintiff, Defendant violated well known public policies meant to protect Plaintiff, and the public at large, from such conduct.

87.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

/ / /

COMPLAINT FOR DAMAGES

88.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

89.     The conduct of Defendant wrongfully terminating Plaintiff subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future.  Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to the Plaintiff.  Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof at trial.

## SEVENTH CAUSE OF ACTION

### WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against All Defendants and DOES 1-10)

90.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

91.     California law prohibits termination or other adverse employment actions against employees for reasons that violate public policy.  Plaintiff is informed and believes and thereon alleges that Defendant violated public policy by constructively terminating his employment for reasons that violate public policy of the State of California.

/ / /

COMPLAINT FOR DAMAGES

92.     During Plaintiff's employment with Defendant, Plaintiff informed Defendant of his disabilities and his need for reasonable accommodations. In response, Defendant took actions to discriminate and retaliate against Plaintiff, including keeping him employed for nearly eight (8) months on a forced unnecessary medical leave without offering him any work despite his ability to work and the availability of such work, all the while depriving him of both income and benefits without justification. At all times, Defendant engaged in such conduct as a means of either actually terminating Plaintiff or, alternatively, constructively terminating him by forcing Plaintiff's resignation. Under such circumstances, there is little doubt that Plaintiff was either actually or constructively wrongfully terminated.  By either actually or constructively discharging Plaintiff, Defendant violated well known public policies meant to protect Plaintiff, and the public at large, from such conduct.

93.     Whereas Defendant may claim that Plaintiff quit and Plaintiff claims that Defendant wrongfully terminated him, to the extent that it may be perceived that Plaintiff resigned, Plaintiff alleges that he was forced to resign as no reasonable or objective person in Plaintiff's position would have continued to remained employed Defendant knowing that Defendant would continue to discriminate and retaliate against Plaintiff by failing to provide him with an opportunity to work all the while unnecessarily continuing to deprive Plaintiff of income and benefits.  Accordingly, as an alternative theory of liability to his claim of actual wrongful termination, Plaintiff alleges he was constructively wrongfully terminated.

94.     As a direct, legal and/or proximate result of the aforesaid acts of Defendant Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of income, earnings, salary and benefits, and the intangible loss of employment related opportunities in his field and damage to his professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages, including all prejudgment interest on the same.

/ / /

/ / /

/ / /

-34-

COMPLAINT FOR DAMAGES

95.     As a direct, legal and/or proximate result of Defendant's conduct, Plaintiff has sustained and continues to suffer both emotional and physical injury, including emotional distress, related emotional trauma, personal injury, physical harm, pain and suffering, personal inconvenience, sickness and illness, etc. all to Plaintiff's damages in an amount to be shown according to proof.

96.     The conduct of Defendant constructively wrongfully terminating Plaintiff subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, as it was anticipated by Defendant that Plaintiff would suffer damages in the foreseeable future. Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct against Plaintiff was done with an intent to cause injury to the Plaintiff.  Moreover, the malicious, fraudulent and/or oppressive conduct was engaged in, authorized or ratified by officers, directors or managing agents of the corporation and/or was the result of the application of unlawful, malicious or oppressive policies and procedures.  As a consequence of the aforesaid oppressive, malicious, and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof at trial.

## **REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For general damages, according to proof;

2.    For special damages, according to proof;

3.    For consequential and incidental damages, according to proof;

4.    For economic damages, including loss of past and/or future earnings, according to proof;

5.    For past and/or future non-economic damages, including emotional distress, physical injury, pain and suffering, *etc*., according to proof

6.    For punitive and/or exemplary damages, according to proof;

7.    For attorneys' fees, according to proof;

8.    For prejudgment interest, according to proof;

9.    For costs of suit incurred herein;

10.   For experts' costs and fees incurred herein; and

11.   For such other and further relief as the Court may deem just and proper.

Dated: November 5, 2021

_____

**BRENNAN S. KAHN, ESQ.**
**PERONA, LANGER, BECK,**
**SERBIN & HARRISON, APC.**
Attorneys for Plaintiff, Victor Sanchez

-36-

COMPLAINT FOR DAMAGES

Electronically FILED by Superior Court of California, County of Riverside on 11/05/2021 02:03 PM

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| BRENNAN S. KAHN, ESQ. (SBN 259548) PERONA, LANGER, BECK, SERBIN & HARRISON 300 East San Antonio Drive Long Beach, California 90807 TELEPHONE NO.: (562) 426-6155   FAX NO. *(Optional)*: (562) 490-9823 E-MAIL ADDRESS: ATTORNEY FOR *(Name)*: Plaintiff, Victor Sanchez | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
STREET ADDRESS: 30755-D Auld Road
MAILING ADDRESS:
CITY AND ZIP CODE: Murrieta, California 92563
BRANCH NAME: Southwest Justice Center

CASE NAME: Sanchez v. Staples

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CVSW2109438 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: Seven (7): Disability Discrimination and Wrongful Termination
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 5, 2021

Brennan S. Kahn, Esq.
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

CEB Essential Forms
ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Sanchez, Victor

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract  *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff  *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property  *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment  *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case  *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

**CEB** **Essential**
ceb.com **Forms**

**CIVIL CASE COVER SHEET**

Sanchez, Victor

EXHIBIT "B"

# EXHIBIT "B"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by Superior Court of California, County of Riverside on 11/05/2021 02:03 PM
Case Number CVSW2109438 0000004429127 - W. Samuel Hamrick Jr., Executive Officer/Clerk of the Court By Vivian Arnold, Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
STAPLES, INC., a Delaware Corporation;
and DOES 1 through 10, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VICTOR SANCHEZ, an Individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER
*(Número del Caso):*
CVSW2109438

RIVERSIDE COUNTY SUPERIOR COURT
30755-D Auld Road
Murrieta, California 92563

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRENNAN S. KAHN, ESQ. (SBN 259548) PERONA, LANGER, BECK, SERBIN & HARRISON
300 East San Antonio Drive (562) 426-6155
Long Beach, California 90807

| DATE:<br>*(Fecha)* | 11/05/2021 | Clerk, by<br>*(Secretario)* | Vivian Arnold | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Sanchez, Victor

EXHIBIT "C"

# EXHIBIT "C"

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| | |
|---|---|
| ☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220 | ☒ **MURRIETA** 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225 | ☐ **PALM SPRINGS** 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882 | ☐ **RIVERSIDE** 4050 Main St., Riverside, CA 92501 |
| ☐ **MORENO VALLEY** 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | |

**RI-CI032**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)* | FOR COURT USE ONLY |
|---|---|
| BRENNAN S. KAHN, ESQ. (SBN 259548) PERONA, LANGER, BECK, SERBIN & HARRISON 300 East San Antonio Drive Long Beach, California 90807 TELEPHONE NO.: (562) 426-6155 FAX NO. *(Optional)*: (562) 490-9823 E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*: Plaintiff, Victor Sanchez | |

| PLAINTIFF/PETITIONER: VICTOR SANCHEZ, an Individual | |
|---|---|
| DEFENDANT/RESPONDENT: STAPLES, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive | CASE NUMBER: CVSW2109438 |

| **CERTIFICATE OF COUNSEL** |
|---|

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒ The action arose in the zip code of: 92563

☐ The action concerns real property located in the zip code of:

☐ The Defendant resides in the zip code of:

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 3115 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date November 5, 2021

Brennan S. Kahn, Esq.
_____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)

▶ _____
(SIGNATURE)

| Approved for Mandatory Use Riverside Superior Court RI-CI032 [Rev. 07/15/21] | **CERTIFICATE OF COUNSEL** | Local Rule 3117 riverside.courts.ca.gov/localfrms/localfrms.shtml |
|---|---|---|

CEB® Essential Forms
ceb.com

Sanchez, Victor

EXHIBIT "D"

# EXHIBIT "D"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
Southwest Justice Center
30755-D Auld Road, Murrieta, CA 92563

**Case Number:**    CVSW2109438

**Case Name:**    SANCHEZ vs STAPLES, INC., A DELAWARE CORPORATION

BRENNAN S KAHN
300 E SAN ANTONIO DR
Long Beach, CA 90807

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 05/04/2022 | 8:30 AM | Department S303 |
| Location of Hearing: 30755-D Auld Road, Murrieta, CA 92563 | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.


Dated: 11/05/2021                                          W. SAMUEL HAMRICK JR.,
                                                           Court Executive Officer/Clerk of Court



                                                  by: _____
                                                          V. Arnold, Deputy Clerk

CI-NOCMC
(Rev. 03/06/20)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
### Southwest Justice Center
### 30755-D Auld Road, Murrieta, CA 92563

**Case Number:**   CVSW2109438

**Case Name:**   SANCHEZ vs STAPLES, INC., A DELAWARE CORPORATION

VICTOR SANCHEZ

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **05/04/2022** | **8:30 AM** | **Department S303** |
| Location of Hearing:<br>**30755-D Auld Road, Murrieta, CA 92563** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 11/05/2021                                          W. SAMUEL HAMRICK JR.,
                                                                      Court Executive Officer/Clerk of Court


                                                                      by: _____
                                                                              V. Arnold, Deputy Clerk

CI-NOCMC
(Rev. 03/06/20)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Southwest Justice Center
30755-D Auld Road, Murrieta, CA 92563

**Case Number:**   CVSW2109438

**Case Name:**   SANCHEZ vs STAPLES, INC., A DELAWARE CORPORATION

STAPLES, INC., A DELAWARE CORPORATION

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **05/04/2022** | **8:30 AM** | **Department S303** |
| Location of Hearing: **30755-D Auld Road, Murrieta, CA 92563** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 11/05/2021                                            W. SAMUEL HAMRICK JR.,
                                                             Court Executive Officer/Clerk of Court


                                                   by: _____
                                                           V. Arnold, Deputy Clerk

CI-NOCMC
(Rev. 03/06/20)

Notice has been printed for the following Firm/Attorneys or Parties: CVSW2109438

KAHN, BRENNAN S                           SANCHEZ, VICTOR
300 E SAN ANTONIO DR
Long Beach, CA 90807


STAPLES, INC., A DELAWARE
CORPORATION

EXHIBIT "E"

# EXHIBIT "E"



**null / ALL**
**Transmittal Number: 24064530**
**Date Processed: 11/15/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kevin Jones<br>Staples Inc.<br>500 Staples Dr<br>Framingham, MA 01702-4478 |
| **Electronic copy provided to:** | Caroline Turcotte<br>Stephanie Molina<br>Betsy McKinlay<br>Yvette Fagan |

| | |
|---|---|
| **Entity:** | Staples, Inc.<br>Entity ID Number  0116303 |
| **Entity Served:** | Staples, Inc. |
| **Title of Action:** | Victor Sanchez vs. Staples, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Riverside County Superior Court, CA |
| **Case/Reference No:** | CVSW2109438 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 11/12/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Perona, Langer, Beck, Serbin & Harrison, APC<br>562-426-6155 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

EXHIBIT "F"

# EXHIBIT "F"

BRENNAN S. KAHN, ESQ. (SBN 259548)
PERONA, LANGER, BECK, SERBIN & HARRISON
300 East San Antonio Drive
Long Beach, California 90807

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

TELEPHONE NO.: (562) 426-6155    FAX NO.: (562) 490-9823
ATTORNEY FOR (Name): Plaintiff, Victor Sanchez

RESERVED FOR CLERK FILE STAMP

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
30755-D Auld Road

Murrieta, California 92563

PLAINTIFF: VICTOR SANCHEZ, an Individual

DEFENDANT: STAPLES, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive

| **AMENDMENT TO COMPLAINT** <br> **(Fictitious/Incorrect Name)** | CASE NUMBER: <br> CVSW2109438 / Dept. S303 |
|---|---|

☐ **FICTITIOUS NAME** *(No order required)*

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

FICTITIOUS NAME

and having discovered the true name of the defendant to be:

TRUE NAME

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| | | |

☒ **INCORRECT NAME** *(Order required)*

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

INCORRECT NAME
STAPLES, INC., a Delaware Corporation

and having discovered the true name of the defendant to be:

TRUE NAME
Staples The Office Superstore, LLC, a Delaware Limited Liability Company

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE <br> December 7, 2021 | TYPE OR PRINT NAME <br> Brennan S. Kahn, Esq. | SIGNATURE OF ATTORNEY |
|---|---|---|

## ORDER

THE COURT ORDERS the amendment approved and filed.

Dated _____

_____
JUDICIAL OFFICER

---

NONJC-157 [Rev. 7/1/2015]



**AMENDMENT TO COMPLAINT**
**(Fictitious / Incorrect Name)**

Code Civ. Proc., §§ 471.5, 472, 473, 474

Sanchez, Victor

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                                          )ss.
COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 San Antonio Drive, Long Beach, CA 90807-0948.

On December 7, 2021, I served the foregoing document(s) described as **AMENDMENT TO COMPLAINT** on the interested parties in this action as follows:

SEE ATTACHED MAILING LIST

( )    **BY FIRST CLASS MAIL (C.C.P. §§ 1013a, et seq.):**  I caused said document(s) to be deposited in the United States Mail in a sealed envelope with postage fully prepaid at Long Beach, California, following the ordinary practice at my place of business of collection and processing of mail on the same day as shown on this declaration.

( )    **BY HAND DELIVERY/PERSONAL SERVICE (C.C.P. §§ 1011, et seq.):**  I caused said document(s) to be personally delivered by a courier to each addressee.

(X)    **BY E-MAIL OR ELECTRONIC TRANSMISSION (C.C.P. §§ 1012.5, et seq.):**    by transmitting via electronic transmission the document listed above to the person(s) at the address(es) set forth on the attached service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

( )    **BY TELECOPY/FACSIMILE (C.C.P. §§ 1012.5, et seq.):**  I caused said document(s) to be telecopied to each addressee's telecopier ("Fax") number.

( )    **BY EXPRESS MAIL (C.C.P. §§ 1013(c)(d), et seq.):**  I caused said document(s) to be deposited with an express service carrier in a sealed envelope designed by the carrier as an express mail envelope, with fees and postage prepaid.

( )    **BY CERTIFIED MAIL (C.C.P. §§ 1020, et seq.):**  I caused said document(s) to be deposited with the United States Mail, postage prepaid, return receipt requested, signed by addressee that said documents were received.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed December 7, 2021, at Long Beach, California.

_____
Brennan S. Kahn

1

**MAILING LIST**

2

3   Glenn L. Briggs, Esq.
   Sarah Mohammadi, Esq.
4   Kading Briggs LLP
   100 Spectrum Center Drive, Suite 800
5   Irvine, California 92618

6   Phone (949) 450-4473
   Facsimile (949) 450-8033
7
   gbriggs@kadingbriggs.com
8   smohammadi@kadingbriggs.com

9   Attorneys for Defendant,
   Staples The Office Superstore, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "G"

# EXHIBIT "G"

GLENN L. BRIGGS (SBN 174497)
Email: gbriggs@kadingbriggs.com
SARAH R. MOHAMMADI  (SBN 295318)
Email: smohammadi@kadingbriggs.com
KADING BRIGGS LLP
100 Spectrum Center Drive, Suite 800
Irvine, California 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Defendant
STAPLES, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE - SOUTHWEST JUSTICE CENTER

| | |
|---|---|
| VICTOR SANCHEZ, an Individual,<br><br>            Plaintiff,<br>vs.<br><br>STAPLES, INC., a Delaware Corporation; and DOES 1 through 10, Inclusive,<br><br>            Defendants. | CASE NO. CVSW2109438<br><br>**ANSWER OF DEFENDANT STAPLES, INC.'S TO PLAINTIFF'S COMPLAINT**<br><br><br>Complaint Filed:  November 5, 2021 |

510494

1

Defendant Staples, Inc. ("Defendant"), for itself and no other defendant, answers the Complaint of plaintiff Victor Sanchez ("Plaintiff") as follows:

## **GENERAL DENIAL**

Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies, generally and specifically, each and every allegation in the Complaint.  Defendant further denies, generally and specifically, that Plaintiff is entitled to the relief requested, or that Plaintiff has been or will be damaged in any sum, or at all, by reason of any act or omission on the part of Defendant, or any of its past or present agents, representatives, or employees, acting in the course and scope of their employment.

## FIRSTAFFIRMATIVE DEFENSE

1.      The Complaint, and each and every purported cause of action contained therein, fails against Defendant, because Defendant did not employ Plaintiff.

## SECOND AFFIRMATIVE DEFENSE

2.      The Complaint, and each and every purported cause of action contained therein, fails to state facts sufficient to constitute any claim upon which relief may be granted against Defendant.

## THIRD AFFIRMATIVE DEFENSE

3.      The Complaint, and each and every purported cause of action contained therein, is barred, in whole or in part, by the applicable statute of limitations, including but not limited to California Code of Civil Procedure Sections 335.1, 338, 340, and 343; and California Government Code Sections 12960 and 12965.

## FOURTH AFFIRMATIVE DEFENSE

4.      Plaintiff's Complaint, and each and every purported cause of action

1   contained therein, is barred, in whole or in part, because the exclusive remedy for the

2   damages alleged by Plaintiff is provided by the California Workers' Compensation Act,

3   California Labor Code Section 3200, *et seq*.  Defendant is also entitled to set-off any

4   recovery Plaintiff may receive from any Workers' Compensation action.

5

6                           FIFTH AFFIRMATIVE DEFENSE

7          5.      Plaintiff has failed to mitigate his damages, if any, and therefore any

8   damages awarded to him must be reduced or eliminated to the extent to which such

9   damages could have been avoided by a reasonable effort to mitigate the same.

10

11                          SIXTH AFFIRMATIVE DEFENSE

12         6.      Plaintiff is barred, in part or total, from recovery of any damages, based

13  upon the doctrine of after-acquired evidence.

14

15                        SEVENTH AFFIRMATIVE DEFENSE

16         7.      Plaintiff is not entitled to recover punitive or exemplary damages against

17  Defendant because: (a) Plaintiff has failed to plead facts sufficient to support allegations

18  of malice or reckless indifference for the rights of Plaintiff or that Defendant was

19  motivated by evil motive or intent; (b) neither Defendant nor any managerial agent of

20  Defendant committed any alleged malicious or reckless act, authorized or ratified such an

21  act, or had advance knowledge of the unfitness, if any, of any employee or employees who

22  allegedly committed such an act, or employed any such employee or employees with a

23  reckless indifference towards the rights or safety of others, and (c) an award of punitive or

24  exemplary damages under the circumstances alleged would violate the due process clauses

25  of the United States and California Constitutions.

26

27                         EIGHTH AFFIRMATIVE DEFENSE

28         8.      Plaintiff's causes of action arising under the FEHA are barred because

510494

3

1   Plaintiff did not timely exhaust his administrative remedies as required and/or otherwise

2   failed to comply with all the statutory prerequisites to bring suit pursuant to the FEHA.

3   Cal. Gov't Code §§ 12900 *et seq.*

4

5   NINTH AFFIRMATIVE DEFENSE

6   9.   Plaintiff's purported causes of action for discrimination and retaliation are

7   barred, in whole or in part, because Defendant took reasonable steps to prevent and correct

8   workplace discrimination and retaliation; Plaintiff unreasonably failed to use the

9   preventive and corrective measures that Defendant provided her; and reasonable use of

10   Defendant's procedures would have prevented at least some of the harm that Plaintiff

11   suffered, if any.

12

13   TENTH AFFIRMATIVE DEFENSE

14   10.   Any and all conduct about which Plaintiff complains or which is attributed

15   to Defendant was a just and proper exercise of management discretion, at all times

16   privileged and justified, and undertaken for lawful, fair and honest reasons, in good faith

17   and without malice.

18

19   ELEVENTH AFFIRMATIVE DEFENSE

20   11.   Defendant denies that it discriminated or retaliated against Plaintiff.

21   However, if Plaintiff proves Defendant's acts were discriminatory and/or retaliatory,

22   Plaintiff is not entitled to damages because Defendant would have made the same decision

23   regardless of the alleged improper grounds.

24

25   TWELFTH AFFIRMATIVE DEFENSE

26   12.   Plaintiff's claim for declaratory, injunctive, or other equitable relief is barred

27   because Plaintiff has an adequate complete remedy at law.

28

510494

4

1

THIRTEENTH AFFIRMATIVE DEFENSE

2      20.    Plaintiff's Complaint, and each and every purported cause of action

3 contained therein, fails to state a cause of action because any accommodation of Plaintiff's

4 alleged disability would have resulted in an undue hardship.

5

6

FOURTEENTH AFFIRMATIVE DEFENSE

7      21.    Plaintiff has waived and/or released some or all of the causes of action

8 asserted in his Complaint.

9

10

FIFTHEENTH AFFIRMATIVE DEFENSE

11      22.    Plaintiff is barred from recovering punitive damages because Defendant had

12 in place a policy to prevent discrimination and retaliation, and made good-faith efforts to

13 implement and enforce that policy.

14

15

SIXTEENTH AFFIRMATIVE DEFENSE

16      25.    Plaintiff and/or other persons or entities other than Defendant were at fault

17 or have acted in bad faith in connection with the acts alleged to have resulted in damage to

18 Plaintiff and are otherwise at fault.  By reason thereof, Plaintiff's right to recovery from

19 Defendant, if any, should be offset and reduced by the amount which the negligence, fault

20 and bad faith of persons and entities other than Defendant, including Plaintiff, contributed

21 to the damages.

22

23

SEVENTEENTH AFFIRMATIVE DEFENSE

24      29.    Defendant reserves the right to assert additional affirmative defenses should

25 they become aware of such facts that warrant such defenses.

26

27      WHEREFORE, Defendant prays for judgment as follows:

28

510494

5

1        1.       That Plaintiff take nothing by reason of the Complaint;

2

3        2.       That the Complaint be dismissed in its entirety with prejudice and that

4    judgment be entered in favor of Defendant;

5

6        3.       That Defendant be awarded its reasonable costs and attorneys' fees; and

7

8        4.       For such other and further relief as the Court deems just and proper.

9

10   DATED:  December 8, 2021              KADING BRIGGS LLP
                                          GLENN L. BRIGGS
11                                        SARAH R. MOHAMMADI

12

13                                        By: _____
                                                GLENN L. BRIGGS
14

15                                        Attorneys for Defendant
                                          STAPLES, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2 STATE OF CALIFORNIA          )
                                               ) ss:
3 COUNTY OF ORANGE          )

4        I am employed in the County of Orange, State of California.  I am over the age of 18, and
not a party to the within action.  My business address is Kading Briggs LLP, 100 Spectrum
5 Center Drive, Suite 800, Irvine, CA 92618.

6        On **December 8, 2021**, I served the foregoing document(s) described as:   **ANSWER
OF DEFENDANT STAPLES, INC.'S PLAINTIFF'S COMPLAINT** on the interested
7 parties in this action by the method indicated below and to the following addresses:

8 Brennan S. Kahn                              Telephone:     (562) 426-6155
Perona, Langer, Beck, Serbin & Harrison   Facsimile:     (562) 490-9823
9 300 East San Antonio Drive                 Email: brennankahn@PLBlaw.com
Long Beach, CA  90807                             veronicaQuijano@plblaw.com
10                                                                JosephineMay@plblaw.com
                                                                     michaelwalker@plblaw.com
11

12 ☐ **BY MAIL:** I caused such envelope, with postage thereon fully prepaid, to be placed in
the United States mail at Irvine, California.  I am readily familiar with the practice of
Kading Briggs LLP for collection and processing correspondence for mailing.  Under that
13 practice, it would be deposited with the United States Postal Service on that same day
with postage thereon fully prepaid at Irvine, California in the ordinary course of business.
14 I am aware that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit for
15 mailing in affidavit.

16 ☒ **BY ELECTRONIC MAIL:**  I served the foregoing document(s) via electronic mail to
the email address(es) noted above.
17

18 ☒ **BY ELECTRONIC SERVICE THROUGH ONE LEGAL ONLINE COURT
SERVICES:** Pursuant to C.R.C. 2.251, I caused a copy of the foregoing document(s) to
be uploaded to One Legal Online Court Services for electronic service on the above-
19 referenced individuals.

20 ☐ **BY OVERNIGHT DELIVERY:** I am readily familiar with the practice of Kading
Briggs LLP for the collection and processing of correspondence for overnight delivery
21 and know that the document(s) described herein will be deposited in a box or other
facility regularly maintained by the overnight delivery carrier.
22 ☐ **BY PERSONAL DELIVERY:**  I caused said document(s) to be personally delivered by
a process server employed by Nationwide Legal.
23

24 ☒ **STATE:** I declare under penalty of perjury under the laws of the State of California that
the above is true and correct.
25
        Executed on **December 8, 2021**, at Irvine, California.
26

27 _____
        **Valerie Beechler**
28

EXHIBIT "H"

# EXHIBIT "H"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Southwest Justice Center
30755-D Auld Road, Murrieta, CA 92563

**Case Number:**   CVSW2109438

**Case Name:**   SANCHEZ vs STAPLES, INC., A DELAWARE CORPORATION

BRENNAN S KAHN
300 E SAN ANTONIO DR
Long Beach, CA 90807

### NOTICE OF RETURN DOCUMENT

The court is unable to process the *Amendment to Complaint* for the reason(s) indicated below:

Amendment to Complaint received 12/7/21 is returned. Incorrect form used, please use Amendment to Complaint (Incorrect Name) form number RI-CI030 available on the court's website. Returned via eFile.

### CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Dated: 12/08/2021

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by:  _____

M. Lopez, Deputy Clerk

CW-NDR
(Rev. 10/07/21)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Southwest Justice Center
30755-D Auld Road, Murrieta, CA 92563

**Case Number:**     CVSW2109438

**Case Name:**      SANCHEZ vs STAPLES, INC., A DELAWARE CORPORATION

VICTOR SANCHEZ

### NOTICE OF RETURN DOCUMENT

The court is unable to process the *Amendment to Complaint* for the reason(s) indicated below:

Amendment to Complaint received 12/7/21 is returned. Incorrect form used, please use Amendment to Complaint (Incorrect Name) form number RI-CI030 available on the court's website. Returned via eFile.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Dated: 12/08/2021

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by: _____
M. Lopez, Deputy Clerk

CW-NDR
(Rev. 10/07/21)

EXHIBIT "I"

# EXHIBIT "I"

1   GLENN L. BRIGGS (SBN 174497)
    Email: gbriggs@kadingbriggs.com
2   SARAH R. MOHAMMADI (SBN 295318)
    Email: smohammadi@kadingbriggs.com
3   KADING BRIGGS LLP
    100 Spectrum Center Drive, Suite 800
4   Irvine, California 92618
    Telephone: (949) 450-8040
5   Facsimile: (949) 450-8033

6   Attorneys for Defendant
    STAPLES, INC.

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF RIVERSIDE

11

12   VICTOR SANCHEZ, an Individual,        CASE NO.: CVSW2109438

13                 Plaintiff,              Assigned for all purposes Department S303

14        vs.

15   STAPLES, INC., a Delaware             **NOTICE TO ADVERSE PARTY OF
     Corporation; and DOES 1 through       REMOVAL OF CIVIL ACTION TO
16   10, inclusive,                        UNITED STATES DISTRICT COURT
                                           UNDER 28 U.S.C. §§ 1332  AND 1441
17                 Defendants.             (DIVERSITY)**

18                                         Complaint Filed:  November 5, 2021

19

20

21

22

23

24

25

26

27

28

510917
                                    1

1    TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2

3    PLEASE TAKE NOTICE THAT a Notice of Removal of this action was

4    filed in the United States District Court for the Central District of California on

5    December 9, 2021.  A copy of said Notice of Removal and supporting exhibits are

6    attached to this Notice, and are served and filed herewith.

7

8

9    DATED:  December 9, 2021        KADING BRIGGS LLP
                                     GLENN L. BRIGGS
10                                   SARAH R. MOHAMMADI

11

12                                   By: _____
                                          SARAH R. MOHAMMADI
13
                                     Attorneys for Defendant
14                                   STAPLES, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

510917

2

EXHIBIT "J"

# EXHIBIT "J"

1   GLENN L. BRIGGS (SBN 174497)
    Email: gbriggs@kadingbriggs.com
2   SARAH R. MOHAMMADI (SBN 295318)
    Email: smohammadi@kadingbriggs.com
3   KADING BRIGGS LLP
    100 Spectrum Center Drive, Suite 800
4   Irvine, California 92618
    Telephone: (949) 450-8040
5   Facsimile: (949) 450-8033

6   Attorneys for Defendant
    STAPLES, INC.

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF RIVERSIDE

11

12   VICTOR SANCHEZ, an Individual,      CASE NO.: CVSW2109438

13              Plaintiff,               Assigned for all purposes Department S303

14        vs.

15   STAPLES, INC., a Delaware           **NOTICE TO STATE COURT OF**
     Corporation; and DOES 1 through     **REMOVAL OF CIVIL ACTION TO THE**
16   10, inclusive,                      **UNITED STATES DISTRICT COURT**
                                         **UNDER 28 U.S.C. §§ 1332 AND 1441**
17              Defendants.              **(DIVERSITY)**

18                                       Complaint Filed:  November 5, 2021

19

20

21

22

23

24

25

26

27

28

508662

                                        1

1    TO THE CLERK OF THE SUPERIOR COURT FOR THE COUNTY OF

2  RIVERSIDE:

3

4    Attached hereto as Exhibit "1" is a true and correct copy of the Notice to

5  Adverse Party of Removal of this action to the United States District Court for the

6  Central District of California.  The original Notice of Removal of Civil Action to

7  the United States District Court was filed with the United States District Court for

8  the Central District of California with the attached exhibits on December 9, 2021.

9

10    The filing of said Notice of Removal effects the removal of the above-

11  entitled action from this Court.

12

13  DATED:  December 9, 2021      KADING BRIGGS LLP

14                                              GLENN L. BRIGGS
                                                 SARAH R. MOHAMMADI
15

16                                              By: _____

17                                                    SARAH R. MOHAMMADI

18                                              Attorneys for Defendant
                                                 STAPLES, INC.
19

20

21

22

23

24

25

26

27

28

508662

2

NOTICE TO STATE COURT OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT